## DAM et al. v. GENERAL ELECTRIC CO. et al.

### No. 1036.

United States District Court
E. D. Washington, N. D.
April 7, 1953.

R. Max Etter, Robert L. Bell, Harve H. Phipps, Spokane, Wash., for plaintiffs.

Pain, Lowe & Coffin, Alan P. O'Kelly, Spokane, Wash., for defendant American Power & Light Co.

Hamblen, Gilbert & Brooke, Spokane, Wash., for defendant General Electric Co.

DRIVER, Chief Judge.

Defendant American Power and Light Company, hereafter called American, by its motion to quash the return of service of process and to dismiss the action, questions the sufficiency of the service and its own amenability to service, within the state of Washington. The action was commenced by the filing of the complaint, on July 16, 1952. The return of service shows that, on the following day, the summons and complaint were served upon American by handing copies thereof to the statutory agent of the Washington Irrigation and Development Company, at Vancouver, Washington.

The pertinent facts are set forth in the amended complaint and in an affidavit of Howard L. Aller, president of American. These documents, as counsel on both sides seem to agree, may be considered by the court in the light of the related information contained in the published reports of the Securities and Exchange Commission and the federal courts dealing with the creation, the corporate structure, and the interrelationship of the three corporations named as defendants in the present action.[1]

1. In re Electric Bond & Share Co. et al., 11 Securities and Exchange Commission Decisions and Reports, 1146; American Power and Light Co. v. Securities and Exchange Commission, 1 Cir., 141 F.2d 606; American Power and Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103.

So far as it is necessary to consider them here, the allegations of the amended complaint are as follows:

The defendants General Electric Company (referred to herein as General) and Electric Bond and Share Company (hereafter designated Bond and Share) are New York corporations. Defendant American is a Maine corporation, which is doing business in the state of Washington. At all times mentioned (which covers a period from prior to 1913 to July, 1952), General and American have wholly controlled the Washington Irrigation and Development Company, a Washington corporation, and have used it as a "Dummy" and instrumentality, so that they could perform their respective businesses through and by it. Prior to and at the time of the commencement of the action, the Washington corporation was owned by American and was being used by it in the same manner and for a like purpose. In April, 1913, all three defendants and the plaintiffs, in the city of New York, entered into an oral joint venture agreement for the construction of a dam and hydro-electric power plant, at the Priest Rapids site, on the Columbia River, in the state of Washington, and for the irrigation of a large area of adjacent, arid land. Prior to the making of the agreement, plaintiffs had done considerable preliminary development work. General had "made certain investments in the Priest Rapids power site" and had acquired certain nearby land which it "held owned and controlled through its dummy, Washington Irrigation and Development Company." After the joint venture agreement had been made, General and Bond and Share, in the name of their "agent and dummy," Washington Irrigation and Development Company, applied for a permit for construction of the dam at Priest Rapids, and the Federal Power Commission issued a permit on March 3, 1921. Bond and Share and General then "undertook diamond drilling of the dam foundation" and proceeded with engineering work and plans in the engineering offices of the respective defendants in New York City. The field work and engineering plans for the dam were completed in June, 1922. On March 25, 1925, the Federal Power Commission issued a license for the dam. Construction was long delayed, however, by various enumerated conditions and events, and, ultimately, defendants abandoned and breached the joint venture agreement, to plaintiffs' damage in a very large sum.

Summarized briefly, the factual recitals in the affidavit of Mr. Aller, the president of American, are as follows:

American was created under the laws of the state of Maine, September 20, 1909. Throughout its entire corporate existence, it has had its principal office in Augusta, Maine. It has also maintained an office in New York City, but has had no other office, and, specifically, has not maintained any place of business in the state of Washington. The corporation has always been a holding company, engaged in the business of acquiring, in New York state and interstate commerce, and holding for investment and realization thereon, the securities of public utility companies operating in various states, including the state of Washington; but it has never conducted any of "its ordinary or regular business" in that state. The Securities and Exchange Commission, acting pursuant to the Public Utility Holding Company Act of 1935, 15 U. S.C.A. § 79 et seq., by an order dated August 22, 1942, directed that the existence of American be terminated and the corporation dissolved. The order was affirmed successively by the United States Court of Appeals for the First Circuit and the Supreme Court.[2] Since November 25, 1946, the date of the Supreme Court decision, American has been in process of dissolution. The corporation owns no property in the state of Washington. It owns all of the outstanding capital stock and debt securities of the Washington Irrigation and Development Company, whose only assets in Washington are some lands, largely uncultivated and idle, and certain securities of the Limestone Company, a

2. For case citations, see footnote 1.

Washington corporation, which owns real estate in the state of Idaho. The Washington Irrigation and Development Company transacts no business, except the incidental leasing of minor portions of its real estate. It engages in no business whatsoever on behalf of American, and, at no time, has it transacted or engaged in business as agent or representative of American. Pursuant to an order of the Securities and Exchange Commission, dated June 6, 1952, and an order of the United States District Court for the District of Maine, dated July 17, 1952, American will dispose of all of its interest in the development company. The books and records of the two corporations are kept "separate and distinct." American has never qualified as a foreign corporation under the laws of the state of Washington. It has never maintained, appointed, or located any officer or managing or general agent in Washington to conduct its business or receive service of process; and, for several years, it has entered into no commercial transactions whatsoever in that state.

This is a civil action, governed, as to the manner of service of process, by the Federal Rules of Civil Procedure. The rules provide that service shall be made upon a foreign corporation by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent, authorized by appointment or by law to receive service of process.[3] The rules further provide, however, that it is sufficient if the summons and complaint are served on a foreign corporation defendant in the manner prescribed by the law of the state in which the service is made for the service of summons on any such defendant in a state court action.[4] The applicable Washington statute recites that summons shall be served upon a foreign corporation "doing business within this state" by delivering a copy thereof to any agent, cashier, or secretary thereof.[5]

 . In the present case, as stated above, American was served by delivery of the summons to the statutory agent of Washington Irrigation and Development Company, a wholly owned subsidiary of American. The service was insufficient to meet the requirements of either the federal rules or the state law, unless we disregard the separate corporate entity of the domestic corporation and regard service upon it as, in legal effect, service upon American.

It is a well established general rule that a foreign corporation, which owns or controls the capital stock and dictates the policies and directs the affairs of a subsidiary corporation, which is doing business within a state, is not thereby subject to service of process through service upon an agent of the subsidiary in that state. A leading case is Cannon Manufacturing Company v. Cudahy Packing Company, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634.[6] There, as in the present action, a foreign corporation was served with process by service upon the agent of its subsidiary corporation, doing business within the state of service. Cudahy, a Maine corporation, used the wholly owned and completely dominated subsidiary corporation, Cudahy of Alabama, to market the parent company's products in North Carolina. In its opinion, the court observed that the device of doing business in North Carolina through the subsidiary was, doubtless, adopted solely to secure some advantage to the parent; but it pointed out that the distinct corporate entity of the subsidiary was in all respects observed. The court concluded that the corporate separation, although "perhaps merely formal, was real" and not "pure fiction" and held that the defendant parent corporation was not subject to service of process in North Carolina.

Cannon Mfg. Co. v. Cudahy, supra, has never been overruled. It was relied upon and followed by the Ninth Circuit Court of Appeals in the recent case of Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 9 Cir., 193 F.2d 158. The Supreme

3. Fed.Rules Civ.Proc. rule 4(d) (3), 28 U.S.C.A.

4. Fed.Rules Civ.Proc. rule 4(d) (7), 28 U.S.C.A.

5. RCW 4.28.080(9).

6. For other cases in which the rule has been applied, see annotation, 18 A.L.R. 2d 187, 194.

Court of Washington also applied the general rule, stated above, in State v. Northwest Magnesite Co., 28 Wash.2d 1, 40, 182 P.2d 643, and, in so doing, cited Cannon Mfg. Co. v. Cudahy as a supporting authority.[7] The author of the American Law Reports annotation[8] states, by way of exception to the general rule, that, if there are facts in addition to stock ownership sufficient to convince the court that the form of corporate separation is a mere fiction, and the subsidiary corporation is only an adjunct or instrumentality of the foreign parent corporation, then the parent will be regarded as doing business in the state and subject to its jurisdiction for the service of process. The statement is deceptively simple. The difficulty arises when the test, whether the subsidiary is a mere adjunct or instrumentality of the parent, is applied to a particular set of facts. The cases in which the corporate separation has been disregarded have taken a wide range. It is difficult to classify them, but they do support the general conclusion that there must be a showing of something more than complete control and direction of the subsidiary by the parent. Absolute domination, through capital stock ownership and its incidents, is not alone sufficient, even though the subsidiary is the instrumentality employed by the parent for the transaction of the latter's business within the forum state. In this connection, attention is again directed to Cannon Mfg. Co. v. Cudahy, supra. There, the parent, for its own advantage, used the subsidiary corporation as a medium for the transaction of business in North Carolina, and the completeness of the subservience of the subsidiary appears in the following quotation from the opinion, 267 U.S. at page 335, 45 S.Ct. at page 251:

"Through ownership of the entire capital stock and otherwise, the defendant [the parent corporation] dominates the Alabama corporation [the subsidiary], immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states."

An exception to the general rule is recognized where a plaintiff seeks to hold a parent corporation liable for an act or omission of its subsidiary corporation, or to enforce against a subsidiary a liability of the parent, and the primary concern is with the enforcement of substantive rights. A number of cases, apparently regarded by the court as within the exception, are cited and expressly distinguished in Cannon Mfg. Co. v. Cudahy, supra, 267 U.S. at page 337, 45 S.Ct. 250.

Another exception is recognized where a corporate subsidiary is used as an instrumentality or adjunct of the parent corporation for the accomplishment of some illegal or fraudulent or dishonest purpose.[9] Commenting on the exceptions to the general rule in State v. Northwest Magnesite Company, supra, 28 Wash.2d at page 42, 182 P.2d at page 664, the Supreme Court of Washington expressed the view that "whether the courts will disregard the corporate form is ultimately a question of whether there is good faith and honesty in the use of corporate privilege for legitimate ends." In support of the statement, the court cited Sommer v. Yakima Motor Coach Co., 174 Wash. 638, 26 P.2d 92 and McCurdy v. Spokane Western Power & Traction Co., 174 Wash. 470, 24 P.2d 1075. In the first of the cited cases (opinion, pages 654, 98 respectively), the Washington court said that two corporations "are not

7. Another case factually similar to the case at bar, in which Cannon Mfg. Co. v. Cudahy was followed, is Lane v. Maple Leaf Milling Co., D.C., 87 F.Supp. 741.

8. 18 A.L.R.2d 187, 198.

9. Dobson v. Farbenfabriken of Elberfeld Co., D.C., 206 F. 125. See also Hazeltine Corp. v. General Electric Corp., D. C., 19 F.Supp. 898, 903, and Industrial Research Corp. v. General Motors, D.C., 29 F.2d 623, 627. The case last cited is an example of an action against a parent corporation for patent infringement by manufacture or sale of the patented device through controlled subsidiary corporations.

to be adjudged as one, in legal effect, unless their property rights and interests are so closely commingled and related as to render it apparent that they are intended to function as one, and to regard them as separate would aid the consummation of a fraud or wrong upon others." [10] In the other cited case, the same court, at pages 496, 1083 respectively made this observation:

"In adjudicating two corporations to be, in legal effect, one, it must appear that the one so dominates and controls the other as to make the other a mere tool or instrument of the one, so that justice requires the dominant corporation to be held liable for the results, and, further, that there shall be such a commingling of their funds and property interests, and their affairs so intimately related in management, that to consider them other than as one would work a fraud upon third persons."

It does not appear that American has had any contacts in the state of Washington, except through its subsidiary corporations.[11] If it is subject to service of process in the instant case, it must be because of its connections with Washington Irrigation and Development Company. Plaintiffs base their claim for relief upon a joint venture agreement, made with American directly, in the state of New York, after the Washington Irrigation Company had been created. They do not seek to hold American liable for any acts or omissions of the subsidiary. There is no contention that the organization of the Washington Corporation, or its use by American, was illegal, dishonest, or fraudulent. The amended complaint alleges that the subsidiary was a "dummy" and instrumentality, employed by American and the other defendants for the transaction of their business within the state of Washington, it is true; but such general allegations go no further than to show complete domination and control of the subsidiary by the parent, through stock ownership and otherwise, such as existed in Cannon Mfg. Co. v. Cudahy. There is no showing of additional facts sufficient to take the present case out of the operation of the general rule. On the other hand, Mr. Aller's affidavit states that the business conducted by the subsidiary is entirely different and separate from that of American, that the subsidiary has never transacted or engaged in business as the agent or representative of American, and that the books and records of the two companies are kept separate and distinct. It must be concluded, therefore, that American was not served with process effectively by the delivery of a copy of the summons to the statutory agent of its subsidiary corporation.

■ The motion under consideration, however, raises a broader issue than the procedural sufficiency of the service of process upon American. Even if service had been made in the manner prescribed by the civil rules and the Washington statute, jurisdiction would not be vested in this court, unless the requirements of due process of the United States Constitution have been satisfied.[12] Such requirements have been discussed by the Supreme Court on many different occasions. The cases differ widely as to their facts, and it has often been said that each case must depend upon its own particular circumstances. But in Peoples' Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587, the court formulated a general principle to the effect that a foreign corporation must be doing

10. See also First National Bank v. Walton, 146 Wash. 367, 262 P. 984; Briggs & Co. v. Harper Clay Products Co., 150 Wash. 235, 272 P. 962.

11. American owns all of the capital stock of another domestic corporation, the Washington Water Power Company, which is not involved in the present action.

12. Peoples' Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Chipman, Ltd. v. Thomas B. Jeffery Co., 251 U.S. 373, 40 S.Ct. 172, 64 L.Ed. 314; Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33, 35; Favell-Utley Realty Co. v. Harbor Plywood Corp., D.C., 94 F.Supp. 96, 98.

business in a state to be subject to service of process there, and "the business must be of such a nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." Although the cited case and others of like purport have not been overruled, the modern trend of judicial thought appears to be toward a more liberal interpretation of what constitutes doing business by a foreign corporation. In one of the later cases, International Shoe Co. v. State of Washington, 326 U.S. 310, at pages 316 to 319, 66 S.Ct. 154, 158, 90 L.Ed. 95, the Supreme Court, citing many of its prior decisions dealing with due process, made the following observations: A corporation has a fictional personality and, therefore, can be present in a state only through the activities of its representatives or agents. The demands of due process may be met by such contacts or activities of the corporation, through its agents, "with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." Presence of a corporation in the state, in this vicarious sense, has never been doubted when its activities have "not only been continuous and systematic, but also give rise to the liabilities sued on". On the other hand, "the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities". The test is essentially qualitative rather than quantitative. Whether due process requirements have been met depends upon the quality and nature of the activity "in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." It is not in accord with due process to render in a state a judgment in personam against a corporate defendant "with which the state has no contacts, ties, or relations."

It fairly appears, without more extensive review of the authorities, that the minimum requirements necessary to satisfy due process, where the action is not based upon any activities of the foreign corporation within the forum state, are that there must be some substantial business activity carried on by such corporation within the state, and the activity must amount to more than casual, isolated, or disconnected transactions, or the mere presence in the state of a passive agent or agency of the corporation.

As has been pointed out, plaintiff's action is based upon a breach of a joint venture agreement, not upon any business activity of American within the state of Washington. The amended complaint states the conclusions that American "is doing business in the state of Washington" and that it has used its subsidiary, Washington Irrigation and Development Company as a "dummy" and instrumentality for the transaction of its business; but there is no specific allegation that American has performed any business act, or carried on any business activity in the state, either directly or through a subsidiary corporation. The only showing in the amended complaint of any particular business activity carried on through the Washington Irrigation and Development Company consists of allegations to the effect that General acquired lands near Priest Rapids, which it held, owned, and controlled through the Washington Company as its dummy, and that General and Bond and Share applied for a permit to build a dam at Priest Rapids through the Washington corporation, as their agent and dummy. On the other hand, it appears from the affidavit of American's president that, since November 25, 1946, American has been in the process of dissolution and has entered into no commercial transactions in the state of Washington for the last several years. It seems clear that minimum due process requirements have not been met.

The motion of defendant American is granted.