**TERRY CARPENTER, Limited**
v.
**IDEAL CEMENT CO. et al.**

**CARR & NEFF LUMBER CO.**
v.
**IDEAL CEMENT CO. et al.**

**L. W. COX & CO.**
v.
**IDEAL CEMENT CO. et al.**

**WAITE LUMBER CO.**
v.
**IDEAL CEMENT CO. et al.**

**PLATTE VALLEY CEMENT TILE MFG. CO.**
v.
**IDEAL CEMENT CO. et al.**

**Civ. A. Nos. 16–53 to 20–53.**

United States District Court
D. of Nebraska, Omaha Division.
Jan. 9, 1954.

Matthews, Kelley, Fitzgerald & Delehant, Omaha, Neb., Lyle F. O'Rourke, and Arnold, Fortas & Porter and Walton Hamilton, Washington, D. C., for plaintiffs.

Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., Lewis, Grant & Davis, Denver, Colo., for Ideal Cement Co.

James G. McIntosh, North Platte, Neb., Loomis, Lazear & Wilson, Cheyenne, Wyo., for Monolith Portland Cement Co.

DONOHOE, Chief Judge.

These actions were instituted by plaintiffs under the anti-trust laws, 15 U.S. C.A. § 1 et seq., against the Ideal Cement Company, Colorado Portland Division, The Monolith Portland Cement Company, a corporation, and the Portland Cement Association. There are now pending several motions which the court has carefully considered and herein rules upon.

1. *Service of Process upon Monolith Portland Cement Company.* On the third day of August, 1950, a deputy United States Marshal for this district served the Monolith Portland Cement Company by serving a summons and a copy of the complaint to one Frank A. Wells at Scottsbluff, Nebraska. On August 22, 1950, the attorney for Monolith Portland Cement Company filed a motion to quash this service of process on the following grounds: 1) The Monolith Portland Cement Company is not engaged in business in Nebraska; and 2) Frank A. Wells is not an agent of any character authorized by appointment or by law to receive service of process, or upon whom service may be made. On April 6, 1953, the defendant, Monolith Portland Cement Company, filed an amended and consolidated motion by which it reiterated its objection to the service of process and in addition moved to dismiss the action against it on the ground that venue was not laid in the proper district and that the complaint fails to state a claim upon which relief can be granted. The court, having taken evidence relating to the issues of process and venue makes the following special

### Findings of Fact.

The Monolith Portland Cement Company, the defendant herein, was incorporated under the laws of Nevada in 1920. Some six years later a related corporation, The Monolith Portland Midwest Company was incorporated in the same state. For facility of expression the first corporation will be referred to as the defendant and the second corporation as Midwest.

Neither the defendant nor Midwest is authorized to do business in Nebraska. Neither had, at any time material to this action, bank accounts or property in this state; nor did they have any officers, directors or transfer agents here. The defendant did not even have any employees in Nebraska; and Midwest had only one, a salesman by the name of Frank A. Wells.

The defendant has a cement manufacturing plant at Monolith, California. Although the bulk of its product is sold in California it does make shipments to Arizona and Nevada. Midwest has a cement manufacturing plant at Laramie, Wyoming, and distributes its products in Wyoming, New Mexico, Nebraska and Colorado. The defendant does not sell in the territory of Midwest, and Midwest does not sell in the territory of the defendant.

During the period in question the directors of the defendant were: Coy Burnett, W. D. Burnett, C. T. West, Kingsbury Burnett, E. R. Durfee, I. M. Jameson and Alfred Black; the officers of the defendant were: Coy Burnett, president; W. D. Burnett, vice president; C. T. West, vice president; Kingsbury Burnett, assistant to the president; E. R. Durfee, secretary-treasurer and Pat Carmichael, assistant treasurer. The directors of Midwest were: Coy Burnett, W. D. Burnett and E. R. Durfee. The officers of Midwest were: Coy Burnett, president; W. D. Burnett, vice president; S. W. Russell, vice president; Kingsbury Burnett, assistant to the president; E. R. Durfee, secretary-treasurer and Pat Carmichael, assistant treasurer. It should be noted that S. W. Russell, vice president of Midwest, is the only officer of Midwest that is not also an officer of the defendant. Mr. Russell runs the Denver office of Midwest and is in charge of distribution of that company's products. Al-

though he proceeds on his own initiative with little direction, he was required to report to his superiors, Coy Burnett and W. D. Burnett, who have authority to control his activities.

The capital stock of Midwest consists of 300,000 shares of authorized preferred stock, having a par value of ten dollars per share. 136,000 shares are presently outstanding in the names of 2,000 shareholders. The common stock was authorized in the amount of 350,000 shares, no par value. There are 300,000 shares issued and outstanding in the name of the defendant. Each share of preferred and each share of common entitles its holder to one vote; and these voting rights are noncumulative. Coy Burnett holds 1,479 shares of the preferred stock. The Jameson Corporation held 39,000 shares of preferred in 1946, and now holds 40,000 shares. It should be mentioned that Mrs. Jameson, who is a director of the defendant, is president of the Jameson Corporation; and Alfred Black, who is on the board of directors of the defendant, is secretary of the Jameson Corporation. Mrs. Jameson also holds 5,500 shares of preferred in her own name.

The defendant and Midwest have separate Articles of Incorporation and By-Laws. The two corporations hold their meetings at separate times and keep separate minutes. The defendant's meetings are held monthly, while Midwest holds only annual meetings and special meetings called by its president approximately four times a year. Meetings are held at the executive offices, 643 Olive Street, Los Angeles, California. This building is owned by the defendant but occupied jointly by the defendant and Midwest. The same is true of the general offices located on San Fernando Road in Los Angeles. The defendant charges Midwest a fixed fee for rental and overhead costs in connection with the operation of these offices.

There is considerable overlapping of personnel employed by the two corporations at their home offices. Mr. Erb is the assistant secretary for both corporations. In addition to him, there are fifteen employees who work for, and are paid by, both corporations. Forty employees work exclusively for the defendant and only two or three work exclusively for Midwest.

Both corporations use the same accounting office. However they keep separate accounts. Receipts of income by the two corporations are deposited in separate accounts in Security First National Bank in Los Angeles, California, and expenses of the two corporations are withdrawn from their separate accounts in that bank. All inter corporate loans are evidenced by properly executed notes.

The expenses of Midwest are paid in three different ways.

1) There is a small revolving fund of $200 kept in the Denver office and used to pay expenses of a petty nature there.

2) There is a revolving fund of $10,000 to meet the payroll and a revolving fund of $4,000 to meet the expenses of operating the manufacturing plant at Laramie, Wyoming.

3) All other expenses of Midwest are paid by requisition transmitted through the Los Angeles accounting office.

The revolving funds are replenished by the Los Angeles accounting office with money drawn from Midwest's separate account in the Security First National Bank. Other expenses, e. g., the salaries of personnel at the Denver office, paid by the accounting office for Midwest, are drawn from the same account.

All accounting is done in the Los Angeles offices. The procedure followed in connection with Midwest is substantially this: Orders are solicited in the four states and the orders are sent to Denver, Colorado. A few unsolicited orders from dealers are sent to Laramie, Wyoming. Orders received at Denver, whether by letter, telegram or telephone, are then submitted to the plant at Laramie for shipment. After shipment is made the invoice is sent from the Denver office direct to the customer; and

in almost all cases the customer will make a remittance to the Denver office. Remittance is most often received in the form of a check. The Denver office attaches a posting slip to the check and forwards it to the general accounting offices in Los Angeles. The accounts receivable clerk there makes the appropriate book entries and the check is then endorsed on behalf of Midwest and deposited to its separate account in the Los Angeles bank. At the end of the month the accounting office in Los Angeles sends a statement directly to the customer.

Mr. Frank A. Wells is employed by Midwest as a salesman. He contacts customers, solicits business and occasionally attempts to collect a delinquent account in his territory which includes the western part of Nebraska, northeastern Colorado and eastern Wyoming. His compensation, consisting of salary and expenses, is paid by a check drawn on the Security National Bank at Los Angeles and paid to him by the Denver office. He reports to S. W. Russell, head of Midwest's office at Denver, and does not do any work for the defendant. Nor does he report to, nor get instructions directly from, anyone in Los Angeles. All his instructions come from Mr. Russell or Mr. Russell's assistant, Mr. McCallin, both of whom are located at the Denver office.

Mr. Wells solicited cement orders from the plaintiffs. Cement was sold to plaintiffs and delivered through interstate commerce from Laramie, Wyoming, to Scottsbluff, Nebraska. In some instances at least plaintiffs made payment by check naming the defendant as payee. These checks, however, were endorsed by Midwest and deposited to its account in the Security First National Bank of Los Angeles.

Mr. Wells was not closely supervised in his work; he mapped out his own routine and made his own calls unless something unusual came up. Although he had to make daily reports to Mr. Russell, it may fairly be said that he managed his territory in his own way.

## Discussion.

A proceeding against a corporation under the anti-trust laws may be brought "not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C.A. § 22.

Venue, under this statute, is not properly laid in this district insofar as the defendant is concerned because the defendant is neither "found" nor "transacting business" here. Even if the court were to assume that Midwest, the defendant's controlled subsidiary, were transacting business in this state,[1] that would not, ipso facto, establish that the defendant is also transacting business here. In Nagl v. Northam Warren Corporation, D.C.Neb.1948, 8 F.R.D. 130, 135, Judge Delehant of this district instructively points out:

"The transaction of business within a state by one of its corporations whose stock is owned by a foreign corporation is not necessarily or usually the doing of business within the state by the latter. Peterson v. Chicago, R. I. & P. R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Caledonia Coal Co. v. Baker, supra [196 U.S. 432, 25 S.Ct. 375, 49 L. Ed. 540.]. This is true even though the parent foreign corporation dominates the operating domestic sub-

1. Although it is unnecessary to a determination of the issues at hand, the court is inclined to the view that the subsidiary Midwest was "transacting business" in Nebraska. Considering its activities in the light of practical, non-technical business or commercial standards it is reasonable to say that Midwest was carrying on business "of a substantial character" in this state. See United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 866, 92 L.Ed. 1091.

sidiary through its stock ownership. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Conley v. Mathieson Alkali Works, supra [190 U.S. 406, 23 S.Ct. 728, 47 L.Ed. 1113]; Peterson v. Chicago, R. I. & P. R. Co., supra; People's Tobacco Co., Ltd. v. American Tobacco Company, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C. 537; Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047. And in that connection interorganizational activity by the parent corporation in respect of its operating subsidiary is not, alone, ground for the conclusion that the former is doing business in the state of the latter's incorporation. Cannon Manufacturing Company v. Cudahy Packing Co., supra; Hurley v. Wells Newton National Corp., D.C.Conn., 49 F.2d 914; Walker v. Ritter-Burns Lumber Co., D.C.Ky., 10 F.Supp. 804."

This conclusion seems compelled by the Cannon Manufacturing Company case, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. In that case the following relationship existed between the parent and subsidiary corporation:

"* * * The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the state; but it does not do so as defendant's agent. It buys from the defendant (a Maine Corporation) and sells to dealers. In fulfillment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers, and from them the Alabama corporation collects the purchase price. Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws." 267 U. S. at page 335, 45 S.Ct. at page 250, 69 L.Ed. 634.

The court went on to hold that the defendant was not transacting business in North Carolina, merely because its subsidiary was. Justice Brandeis points out:

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177, 178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali

Works, 190 U.S. 406, 409–411, 23 S.Ct. 728, 47 L.Ed. 1113; Peterson v. Chicago, Rock Island & Pacific R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, and People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction." 267 U.S. at pages 336–337, 45 S.Ct. at page 251, 69 L.Ed. 634.

The Cannon Manufacturing Company case, supra, insofar as it is applicable to the case at bar has not been overruled, nor even modified by cases cited by counsel for plaintiffs. In United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, the Supreme Court concluded that a British corporation engaged in New York in various but continuing efforts to conserve and exploit its television inventions and patents, and represented in New York by two of its directors, one of whom held a comprehensive power of attorney, was "transacting business" in New York. A careful reading of the opinion in this case indicates that the British corporation was "found" in New York because of its own activities there and not because of its relationship to, and control of, a subsidiary corporation, incorporated in and doing business in, New York.

■ International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, also relied upon by appellant, relates to the power of states, as limited by the Due Process Clause of the Federal Constitution, to enforce against a foreign corporation obligations arising out of activities of one of its salesmen who exhibited samples and solicited orders within the state which orders were to be accepted or rejected by the foreign corporation outside the state. The court held that service upon the salesman was valid service upon the foreign corporation. This is just another case determining what activities constitute doing business within the state. Obviously the activities of the agent are the activities of the principal. See also Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. However, this court does not read the International Shoe Company Case as holding that the activities of a subsidiary are the activities of its parent corporation; and the cases decided since the International Shoe Company Case hold to the contrary. Steinway v. Majestic Amusement Co., 10 Cir., 1949, 179 F.2d 681; Dam v. General Electric Co., D.C.E.D.Wash.1953, 111 F. Supp. 342; Lawlor v. National Screen Service Corp., D.C.E.D.Penn.1950, 10 F. R.D. 123; Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C. S.D.N.Y.1946, 70 F.Supp. 77.

This is not a case where the plaintiff is seeking to hold the parent corporation liable for an act or omission of its subsidiary nor where the plaintiff is seeking to enforce against a subsidiary a liability of the parent corporation and primary concern is with the enforcement of substantive rights; nor is it a case where the corporate subsidiary is used as an instrumentality or adjunct of the parent corporation for the accomplishment of some illegal or fraudulent or dishonest purpose. The subsidiary corporation was neither a "dummy" nor an "instrumentality" of the parent corporation in this case. Distinguish: Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148; Chicago, M. & St. P. R. Co. v. Minneapolis Civic Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; United States v. Lehigh Valley R. Co., 254 U.S. 255, 41 S.Ct. 104, 65 L.Ed. 253; See Annotation: Ownership or control by foreign corporation

of stock of other corporation as constituting doing business within state, 18 A.L.R.2d 187.

■■ Not only is venue not laid in the proper district in this case but also the service of process upon the defendant was not valid. The defendant is neither an "inhabitant of" nor "found" in this district within the purview of Section 22, Title 15 U.S.C.A. As a general rule, a foreign corporation which owns or controls capital stock and dictates policies and directs affairs of subsidiary corporation, which is not an "agent," "instrumentality" or "dummy" of the parent corporation, is not thereby subject to service of process through service upon an agent of the subsidiary in the state. Cannon Manufacturing Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 9 Cir., 1951, 193 F.2d 158; Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900; Steinway v. Majestic Amusement Co., 10 Cir., 1950, 179 F.2d 681; Dam v. General Electric Co., D.C.E.D.Wash.1953, 111 F. Supp. 342; Nagl v. Northam Warren Corporation, D.C.Neb., 1948, 8 F.R.D. 130.

Although there are recognized exceptions to the general rule stated above the court has reached the conclusion that this case does not fall within any of the exceptions. It is unnecessary to unduly prolong this memorandum by a discussion of all the exceptions. See Dam v. General Electric Co., D.C., 111 F.Supp. 342, 346.

■ Although service in this case would have been effective if made in compliance with state law, Rule 4(d) (3) and (7), Federal Rules of Civil Procedure, 28 U.S.C.A., the court is unable to find any Nebraska case holding that service upon an agent of a subsidiary corporation is proper service upon the parent corporation. It is true that service upon a foreign corporation may be made under the laws of Nebraska by serving the "managing agent" of

such foreign corporation in this state. Section 25–511, R.R.S.Neb.1943; Cf. Western Smelting & Refining Co. v. Pennsylvania R. Co., D.C.Neb.1948, 81 F.Supp. 494. But that does not mean that service upon a foreign corporation may be made by serving the managing agent of a subsidiary of such foreign corporation.

Counsel for the defendant, Monolith Portland Cement Company, shall prepare, in keeping with the thought expressed in this memorandum, the appropriate orders of dismissal in all of the cases which were consolidated for the purpose of considering the motion just discussed.

2. *Motion of Defendant, Ideal Cement Company, Colorado Portland Division, to Dismiss.* Defendant, Ideal Cement Company, requests the court to dismiss the action as to it for two reasons: 1) the complaint fails to state a claim upon which relief can be granted; and 2) the plaintiffs have failed to answer interrogatories submitted by the defendant.

■ Although the first reason for dismissal has been very meritoriously presented by defendant's counsel, the court has reached the conclusion, in view of the present posture of the record, that "it does not appear to a certainty that plaintiffs would be entitled to no relief under any state of facts which could be proved in support of the claim asserted by them." See United States v. Arkansas Power & Light Co., 8 Cir., 1948, 165 F.2d 354; Cool v. International Shoe Co., 8 Cir., 1944, 142 F.2d 318.

■ With regard to the second reason for dismissal asserted by the defendant, the court is aware of its power to use such drastic means to enforce the discovery procedure where the parties disregard thereof is wilful, Rule 37(d) Federal Rules of Federal Procedure, 28 U.S.C.A., but is not disposed to view this as an appropriate case for such action. However, the court cannot condone evasion and delay. Consequently

plaintiffs will be given twenty days to answer the interrogatories filed by the defendant; and if plaintiffs persist in ignoring the interrogatories the sanctions of Rule 37(d) may be invoked.

Dated this 9th day of January, 1954.