Doris BERKMAN, Plaintiff,

v.

ANN LEWIS SHOPS, Inc., Defendant.

United States District Court
S. D. New York.

June 20, 1956.

George M. Lehr, New York City, for plaintiff.

Kugel, Mezansky & Berkeley, New York City, for defendant, Samuel Mezansky, New York City, of counsel.

DAWSON, District Judge.

This action, tried by the Court without a jury, is one wherein the plaintiff sues as assignee of three judgments returned in Florida against the defendant. The action was started in the State Courts of New York and removed to this Court by reason of diversity of citizenship. The defendant admits that the judgments were rendered against it in Florida, but contends the judgments are void on the ground that the Florida Court lacked jurisdiction over it.

The action involves primarily the question as to whether jurisdiction was obtained in Florida over the defendant, a Delaware corporation with no office or agent in the State of Florida, solely because of the fact that the defendant had a wholly-owned subsidiary in that State.

### The Facts

There is no controversy as to the essential facts. The defendant, Ann Lewis Shops, Inc., was organized in 1946 under the laws of the State of Delaware. Its business was described by its president as that of "a parent company operating various subsidiaries, owning various subsidiaries which operate women's re-

tail establishments." The defendant does not operate any of the establishments by itself; it does not operate any shops or selling agencies directly; it had no office or place of business in Florida.

Defendant did cause to be organized a wholly-owned subsidiary, also chartered under the laws of Delaware, under the name of "Ann Lewis Shops of Tampa, Inc." (hereafter sometimes referred to as the "subsidiary"). This was the only subsidiary of the defendant which engaged in business in the State of Florida. At the time of the organization of this subsidiary, the defendant had approximately forty-seven separate subsidiaries.

This subsidiary, Ann Lewis Shops of Tampa, Inc., was incorporated for the specific purpose of owning and operating a store in Tampa, Florida. It had $10,000 paid-in capital. The defendant invested $70,169 in the form of capital contribution and/or loans in this subsidiary, and has been the sole stockholder of the subsidiary since its inception. The parent company and the subsidiary maintained separate books of account and had separate bank accounts. The subsidiary had five or six employees in Florida, none of whom was an employee of the parent company. The officers and directors of the parent and subsidiary companies were substantially the same. The parent company maintained a buying service which made purchases, and each subsidiary was charged with the expense of maintaining such central buying service.

On or about September 10, 1946, a lease was entered into between the subsidiary and Cuesta Rey & Company, a Florida corporation which is the plaintiff's assignor. This lease was the basis of the causes which underly the Florida judgments. The lease was signed by the subsidiary, and the obligations under the lease were guaranteed by the parent corporation. Louis Silver and Ira Silver signed as president and secretary of both the parent and the subsidiary corporations in New York City on September 10, 1946. It was signed on the landlord's behalf on October 15, 1946 in Tampa, Florida. An agreement modifying the lease was signed by the same individuals on behalf of the three parties in 1951 again in New York City and Tampa, respectively.

On June 8, July 1, and July 7, 1955, Cuesta Rey & Company, the landlord, commenced actions upon the lease against both the parent and the subsidiary in the Circuit Court for the 13th Judicial Circuit in and for Hillsborough County, Florida. The attorney sent to the defendant in this action, by registered mail, notices of the institution of the suits pursuant to §§ 47.16 and 47.30 of the Florida Statutes, F.S.A., along with copies of the summons and complaint. He also. filed copies in the office of the Secretary of State of Florida and apparently complied in all respects with the prescribed procedure for substituted service of process. The defendant has conceded that it received the notices at its main office in New York City. Neither the parent nor the subsidiary appeared and on motion of the plaintiff, default judgments were rendered against both the defendant and its subsidiary in the three actions as follows:

No. 30124–L for $2,273.85 on July 21, 1955;

No. 30174–L for $2,278.77 on August 2, 1955;

No. 30197–L for $6,687.74 on August 2, 1955.

The first two judgments were for rent installments for May 1, and June 1, 1955. The third was for delinquent taxes that were to be paid on April 1, 1955. All three judgments include sums for reasonable attorneys' fees claimed pursuant to a provision in the lease, and costs. It is not disputed that the Florida Court had jurisdiction over the subsidiary.

Partial payments were made on all three judgments (by whom does not appear) so that there is now owing $746.16 on the first, $730.72 on the second, and $5,734.89 on the third, and interest. On October 11, 1955, Cuesta Rey & Company, the landlord, assigned the judgments to Doris Berkman, the plaintiff.

Shortly afterward, the present action was commenced in the New York Supreme Court and removed by the defendant to this Court.

It is the defendant's contention that the Florida judgments are void because it was not doing business in Florida at the time of their rendition and of the substituted service of process.

The parent had no employees located in Florida, and has never done any business in that State except as may be inferred from the foregoing.

The statute under which jurisdiction was asserted in Florida provides, in part:

Section 47.16—Florida Statutes. *"Service of process upon nonresidents engaging in business in state.* The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of this state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture, in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if

served personally on such persons or foreign corporations."

This statute was enacted in 1951. To establish jurisdiction, it is necessary to determine whether, based upon the foregoing facts, the defendant's activities were such as "to operate, conduct, engage in, or carry on a business or business venture, in the State of Florida".

The recitals in the three judgments, upon which the Florida Court based its jurisdiction, were as follows:

"That the guarantee of the provisions of said Lease Agreement by Ann Lewis Shops, Inc., was in connection with the business venture of Ann Lewis Shops, Inc., in the State of Florida. That Ann Lewis Shops of Tampa, Inc., is a wholly owned subsidiary of Ann Lewis Shops, Inc., and, constitutes the vehicle by which Ann Lewis Shops, Inc., sold merchandise under the trade name 'Ann Lewis' in the State of Florida. That Ann Lewis Shops, Inc. is engaged in the business of selling merchandise under the trade name 'Ann Lewis', either individually, or through wholly owned subsidiaries, and the president and secretary of both Ann Lewis Shops, Inc. and Ann Lewis Shops of Tampa, Inc., are the same. That said Ann Lewis Shops, Inc., was duly and properly served in accordance with the provisions of Section 47.16 of the Florida Statutes."

## Discussion

 Ordinarily, of course, the judgment of a court of another state is entitled to full faith and credit in every Court within the United States as it has by law or usage in the state in which it was rendered. 28 U.S.C. § 1738. However, in a suit upon the judgment of another state, the jurisdiction of the Court which rendered it is still open to judicial inquiry and when the matter of fact or law on which jurisdiction depends was not litigated in the original suit, it is a matter to be adjudicated in the suit founded upon the judgment.

Adam v. Saenger, 1938, 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649.

The issues, therefore, which are presented for determination of this Court are whether the activities of the defendant were such as to give jurisdiction to the Courts of Florida under the particular statute of Florida here involved; and, if so, whether a statute so construed would be violative of the provisions of the Fourteenth Amendment to the United States Constitution as depriving a person of due process of law.

The Florida cases which have interpreted the Florida statute here involved have not passed upon the question as to whether a foreign corporation may be subjected to jurisdiction by reason of the fact that it has a wholly-owned subsidiary doing business in the state.[1]

In one case decided before the enactment of the present statute, the Florida Supreme Court intimated that a foreign corporation is not "transacting business" within the state within a statute requiring a foreign corporation to obtain a permit to "transact business" within the state merely by reason of the fact that it owned or purchased stock of a domestic corporation engaged in transacting business therein. The Court also relied on a statutory proviso that " " "no violation of this law shall affect the title to property thus acquired." ' " Crockin v. Boston Store of Ft. Myers, 1939, 137 Fla. 853, 188 So. 853, 857. The Court quoted, apparently with approval, the statement at 14A. C.J. p. 1291 as follows:

" 'It has generally been held that a foreign corporation is not "doing" or "transacting business" within the meaning of the statutes under consideration by reason of the fact that it owns and holds stock of a domestic corporation engaged in "doing" or "transacting business" therein. This is true, although the amount owned and held constitutes the controlling interest.' " See also 20 C.J. S., Corporations, § 1841.

■ The general rule is, and has been for many years, that a foreign corporation which has a wholly-owned subsidiary in a state which performs the local activities of soliciting, selling, and distributing products provided by the parent company is not amenable to suit in the local forum, provided that separate identities of the two corporations are maintained. The leading case on this subject is Cannon Mfg. Co. v. Cudahy Pkg. Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 251, 69 L.Ed. 634. In that case, the defendant, a Maine corporation, marketed its products in North Carolina through a subsidiary, an Alabama corporation, which it completely dominated through stock ownership and otherwise. The Supreme Court held that the defendant corporation did not thereby do business in North Carolina so as to be present there for purposes of suit. The Court pointed out that although the parent company completely dominated the subsidiary in the same way as it did those selling branches or departments of its business which were not separately incorporated, nevertheless, the existence of the subsidiary company as a distinct corporate entity was in all respects observed. Mr.

1. State ex rel. Weber v. Register, Fla., 1953, 67 So.2d 619. This case involved the question as to whether non-residents who purchased an orange grove in Florida and operated and conducted it as a business venture in Florida and thereafter listed it for sale were engaged in a business venture within the State. The Court held that the purchase of the grove and the listing of the grove for sale amounted to engaging in a business venture within the meaning of the Florida statute. State ex rel. Guardian Credit Indemnity Corp. v. Harrison, Fla.1954, 74 So.2d 371, 373. In this case the Court held that where a foreign corporation which operated a collection service and had once qualified to do business in Florida, but whose agent had resigned, and which furnished its "brokers" with instructions and supplies for use in presenting a certain " 'credit indemnity plan' " to prospective clients and where the effective performance of the contract between the corporation and the client could take place only in Florida, the corporation was engaged in a business or business venture within the State of Florida and was amenable to substituted service of process.

Justice Brandeis, in delivering the opinion of the Court, said:

"All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws."

The Court said that the question was "whether the corporate separation carefully maintained must be ignored in determining the existence of jurisdiction" and held that this corporate separation could not be ignored and that the parent company was not present in North Carolina for purposes of suit in that State.

This decision is recognized by the commentators of the present as still good law.[2]

The decision has also been followed in many recent cases.[3]

Thus absolute domination through capital stock ownership and direction is not alone sufficient even though the subsidiary is the instrumentality employed by the parent for the transaction of the latter's business within the forum state.

The cases in which the corporate separation has been disregarded were cases where there was something more than complete control and direction of the subsidiary by the parent. There may be situations where the subsidiary acts not on its own behalf but acts as the agent of the parent. In such a case, of course, the parent would be deemed doing business in the forum state not by reason of the fact that it has a subsidiary in the state but by virtue of the fact that the subsidiary acted as agent for the parent in that state.[4]

So, also, jurisdiction may be established at times where the plaintiff is seeking to enforce against a subsidiary a liability of the parent corporation; or where the corporate subsidiary is used as an instrumentality or adjunct of the parent corporation for the accomplishment of some illegal or fraudulent or dishonest purpose; or where the subsidiary was nothing more than a "dummy".[5]

In the present case, plaintiff bases its claim of jurisdiction of the parent in Florida solely upon the ground that the parent owned all of the stock of the subsidiary company, that both had the same Board of Directors and substantially the same officers; that the parent

---

2. Note, "Doing Business as a Test of Venue and Jurisdiction over Foreign Corporations in the Federal Courts", 56 Col. L.Rev. 394, 409 (1956); 18 Fletcher, Cyclopedia Corporations §§ 8773, 8774 (Revised 1955); Anno. "Ownership or control by foreign corporation of stock of other corporation as constituting doing business within state", 18 A.L.R.2d 187 (1951); 20 C.J.S., Corporations, § 1841 (1940).

3. Harris v. Deere & Co., 4 Cir., 1955, 223 F.2d 161; Fergus Motors, Inc., v. Standard-Triumph Motor Co., D.C.S.D.N.Y. 1955, 130 F.Supp. 780; Proctor v. Sagamore Big Game Club, D.C.W.D.Pa.1955, 128 F.Supp. 885; Bergholt v. Hudson Motor Car Co., D.C.D.Minn.1954, 124 F. Supp. 716; Hudson Minneapolis, Inc., v. Hudson Motor Car Co., D.C.D.Minn. 1954, 124 F.Supp. 720; Terry Carpenter, Ltd. v. Ideal Cement Co., D.C.D.Neb. 1954, 117 F.Supp. 441; Ackerley v. Commercial Credit Co., D.C.D.N.J.1953, 111

F.Supp. 92, 103; Dam v. General Electric Co., D.C.E.D.Wash.1953, 111 F.Supp. 342; Gravely Motor P. & C. Co. v. H. V. Carter Co., Inc., 9 Cir., 1951, 193 F.2d 158; Donner v. Weinberger's Hair Shops, Inc., 1st Dept. 1952, 280 App. Div. 67, 111 N.Y.S.2d 310.

4. Mas v. Orange-Crush Co., 4 Cir., 1938, 99 F.2d 675; Williams v. Campbell Soup Co., D.C.W.D.Mo.1948, 80 F.Supp. 835; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 1949, 175 F.2d 184, certiorari denied 1949, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Bator v. Boosey & Hawkes, D.C.S.D.N.Y.1948, 80 F.Supp. 294.

5. See Terry Carpenter, Ltd. v. Ideal Cement Co., D.C.D.Neb.1954, 117 F.Supp. 441; United States v. Watchmakers of Switzerland Inf. C., D.C.S.D.N.Y.1955, 133 F.Supp. 40; United States v. Scophony Corp., 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.

company had a central buying agency for all of its subsidiaries; and that the parent guaranteed a lease of the subsidiary. These facts alone would not be sufficient to establish that the parent company was operating or carrying on a business or a business venture in the State of Florida under the generally recognized principles of law. The fact that each corporation had separate bank accounts, separate employees, and separate books showed that the corporate identity of each was carefully preserved. The fact that the subsidiary had a capital of its own and substantial amounts of money put into it showed that it was not a "dummy". The plaintiff did business with the subsidiary in Florida in the sense that it leased property to the subsidiary. It secured a separate guaranty of the lease from the parent which it recognized as a foreign corporation, and which guaranty was signed in New York. If plaintiff had so desired, it could have insisted, as a provision of the lease, that it consent to suit in the State of Florida. Such a stipulation would have been effective to give the Courts of Florida jurisdiction in personam. Gilbert v. Burnstine, 1931, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453. It did not insist upon such a stipulation. The plaintiff may still bring suit upon the guaranty in the State of New York where the Courts would unquestionably have jurisdiction. However, when the Florida statute used the terms a "business" or a "business venture", it must be concluded that the statute used them, in the light of the current law defining such terms, as not including a situation where a foreign corporation had a wholly-owned subsidiary in the forum state.

### Findings and Conclusions

The Court therefore holds that on the facts before the Florida Court and before this Court, the defendant had not, within the meaning of the Florida statute, accepted

> "the privilege * * * to operate, conduct, engage in, or carry on a business or business venture, in the State of Florida, or to have an office or agency in the State of Florida."

The Court concludes that the Florida Courts were without jurisdiction to render against the defendant the judgments which are here sued upon.

This is not to say that a statute might not constitutionally be drawn which would make the presence in a state of a wholly-owned subsidiary of a foreign corporation sufficient basis to assert jurisdiction over the parent company. All that the due process clause would require is that the defendant "have certain minimum contacts with [the territory of the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." [6]

However, the Florida statute does not so provide, nor have the Florida Courts interpreted the Florida statute to that effect. Any such radical change in the policy of the law with reference to jurisdiction over a parent corporation because of the presence of a subsidiary in a state should not be accomplished by a Court decision under a statute which does not seem to envision such a drastic change in concepts. Any such change might have far-reaching economic results to the particular state both as to methods of doing business in the state and as to the willingness of foreign corporations to have subsidiaries enter business in that state.[7] Whether such change should be made should be left for determination by the legislative authorities of the state, who alone would have the oppor-

6. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95; see Schutt v. Commercial Travelers Mut. Acc. Ass'n, 2 Cir., 1956, 229 F.2d 158; Travelers Health Ass'n v. Commonwealth of Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; cf. Dam v. General Electric Co., D.C.E.D.Wash.1953, 111 F.Supp. 342.

7. As Judge Murphy has pointed out, one of the dominant motives in organizing and having a subsidiary may be the parent's desire for "avoidance of suits". Fergus Motors, Inc., v. Standard-Triumph Motor Co., Ltd., D.C.S.D.N.Y.

tunity to weigh the economic advantages and disadvantages of such a change in the generally accepted concept of the terms "doing business" or "carrying on a business venture". Unless such legislation is enacted, the Court must agree with the opinion of the Court of Appeals of the Fourth Circuit when they said:

> "Much can be said in support of the view that a manufacturer which distributes its product by selling it to a wholly owned and completely controlled subsidiary, should, for purposes of jurisdiction in the courts, be held to be doing business wherever the subsidiary sells the product. The fiction of different corporate entities ought not permit the manufacturer, in such case, to avoid suit in the states where its product is being sold and where the wholly owned and controlled subsidiary is representing it just as truly as if it were an agent in the legal sense; and we would so hold if we felt ourselves at liberty to do so. It is not for us, however, to overrule or modify decisions of the Supreme Court; and, until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer." Harris v. Deere & Co., 4 Cir., 1955, 223 F.2d 161, at pages 162–163.

The motion of the defendant for judgment on the facts and on the law is granted, and judgment shall be entered for the defendant with costs.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

1955, 130 F.Supp. 780, at page 781; see also National Carbide Corp. v. Commissioner, 1949, 336 U.S. 422, 438, footnote 21, 69 S.Ct. 726, 93 L.Ed. 779.