EMIL CROCKIN v. THE BOSTON STORE OF FT. MYERS, INC., *et al.*

188 So. 853.
Division A.
Opinion Filed May 16, 1939
Rehearing Denied June 1, 1939.

854

*Himes & Himes,* for Appellant;

*Treadwell & Treadwell* and *M. A. Rosin,* for Appellees.

BUFORD, J.—The appeal is from an order, the pertinent part of which is: "that unless the plaintiff's predecessor in ownership of cause of action involved in this suit, to-wit, Wear-Well Corporation, domesticates under the laws of State of Florida, and receives permit from the Secretary of State, authorizing it to do business within the State of Florida, in accordance with statute in such cases made and provided, within sixty days from this date, that said cause stands dismissed at cost of plaintiff."

Three questions are posed by appellant for our determination as follows:

"Does the acceptance by a foreign corporation, through its attorney in the State of Florida, of a sum of money and a certificate for shares of stock in a Florida corporation, in settlement of a note made by a citizen of Florida and owned by such foreign corporation, violate Section 6026, Compiled General Laws of Florida, 1927, which provides that no foreign corporation 'shall transact business or acquire, hold or dispose of property in the State' until it shall have qualified with the Secretary of State?"

"2. If Question 1 was properly answered in the affirmative, can the plaintiff, an individual citizen of Maryland, in whom said shares of stock in the Florida Corporation became vested upon the dissolution of said foreign corporation, maintain this suit for the purpose of having cancelled certain alleged void and fraudulent debts attempted to be created on the part of the Florida corporation to its other stockholders just prior to the acceptance of said shares by said foreign corporation, it being admitted that said foreign corporation never qualified with the Secretary of State?

"3. If Question 2 was properly answered in the negative, should the trial court order that unless said foreign corporation, which has been dissolved as aforesaid, 'domesticates under the laws of Florida, and receives permit from the Secretary of State authorizing it to do business within the State of Florida, in accordance with statute in such cases made and provided, within sixty days from this date, that said cause stands dismissed at cost of plaintiff'?"

The appellee states the first question thus:

"Does a foreign corporation which is the holder of a note given by a citizen of the State of Florida, violate Section 6026 of Compiled General Laws of Florida, which provides that no such foreign corporation 'shall transact business or acquire, hold or dispose of property in this state' until it shall have qualified as provided in such statute, by sending such note to its attorney in the State of Florida and through its attorney, in the State of Florida, exchanging said note for a sum of money and a certificate representing certain shares of stock in a Florida corporation, which money and shares of stock are delivered to the foreign corporation's attorney in the State

of Florida, and where the note is delivered by the foreign corporation, through its attorney to holder of said stock in the State of Florida?"

We think stated in either language the first question must be answered in the negative.

The order, *supra,* was entered on motion to dismiss amended bill of complaint. The amended bill alleged in effect that "Wear-Well Corporation, which was incorporated under the laws of Maryland and of which the plaintiff was President, owned a promissory note for $16,000.00 which had theretofore been made and delivered by the defendant Simon Rosin to the plaintiff, and which, although not endorsed by the plaintiff, had been transferred and delivered by him to the Wear-Well Corporation in the State of Maryland; that shortly prior to April 4th said note had been sent by the Wear-Well Corporation to its attorney in the City of Tampa, Florida, for collection; that by means of correspondence passing through the mails between the defendant Simon Rosin and the Wear-Well Corporation, an agreement was reached for the settlement of said note by which the Wear-Well Corporation agreed to cause said note to be endorsed without recourse by the plaintiff, the payee therein, to the defendants, Joseph Stern and A. Stern and to be delivered to said last named defendants, in consideration that the defendant Simon Rosin did agree to pay the Wear-Well Corporation the sum of $100.00 for attorney's fees and to cause to be transferred to the Wear-Well Corporation 62½ shares of the capital stock of the defendant, The Boston Store of Ft. Myers, Inc., a Florida corporation and hereinafter referred to as The Boston Store; that said agreement was to be carried out by the Wear-Well Corporation sending said note, endorsed as aforesaid, to its attorney in Tampa, and by said attorney in Tampa turning said note over to the attorney for the

defendants, Simon Rosin, Joseph Stern and A. Stern contemporaneously with the payment to him of the sum of $100.00 and the delivery to him of a certificate for said 62½ shares made out in the name of the Wear-Well Corporation; and that said agreement for the settlement of said note was in fact carried out in the City of Tampa in the manner last stated.

It is also alleged, and admitted, that thereafter and about December 31, 1934, the Wear-Well Corporation was dissolved and no longer exists as a corporation; that at the time the Wear-Well Corporation acquired said 62½ shares and at all times thereafter until its dissolution, plaintiff owned all of the capital stock of the Wear-Well Corporation, and that when Wear-Well Corporation was dissolved, all of its assets, including said 62½ shares, were transferred to plaintiff as such sole stockholder, and that he acquired title to said shares in the manner last stated and not by virtue of any sale to him by the Wear-Well corporation of said shares.

The amended bill admitted that the Wear-Well Corporation had never qualified in Florida, but expressly alleged that it had never transacted any business in Florida, and had never acquired, held or disposed of any property in Florida, and also alleged as proper conclusions of law based upon the facts set forth, that the Wear-Well Corporation was not required to qualify in order to be able to accept said 62½ shares as aforesaid, and that even if it were, its failure so to do could not legally affect plaintiff's right to maintain this suit, and further, that by reason of its dissolution as aforesaid, the Wear-Well Corporation could not now qualify."

Other allegations of the amended bill are unimportant for the purpose here involved.

Section 4095 R. G. S., 6026 C. G. L., provides:

"No foreign corporation shall transact business or acquire, hold or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this State; and any foreign corporation which shall violate the provisions of this section shall render itself, its officers and agents severally liable to the penalties and fines provided in Section 7449, but no violation of this law shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof."

The legal principles applicable to this situation are found aptly stated in 14A Corpus Juris, page 1273, as follows:

"In most jurisdictions it has been held that single or isolated transactions do not constitute doing business within the meaning of such statutes, although they are a part of the very business for which the corporation is organized to transact, if the action of the corporation in engaging therein indicates no purpose of continuity of conduct in that respect. Where, however, the single transaction is, or where the isolated transactions form a part of the regular business of the corporation, and the action of the corporation in engaging therein indicates a purpose to continue to engage within the State in the transaction of a part or all of its ordinary business, the foreign corporation is doing, transacting, carrying on, or engaging in business therein within the meaning of such statutes."

And on page 1278:

"The collection in a state by a foreign corporation of debts due it for goods sold or otherwise contracted does not constitute doing, transacting, carrying on, or engaging in business within the meaning of the statutes under consideration nor does the acceptance in a state of evidence

of such debts, or the taking of security therefor come within the meaning of such statutes. The same is true of the action of a corporation in a state in adjusting or compromising such debts."

And on page 1280:

"Under the rule that the statutes under consideration have no application to acts done within a state which are merely incidental to the prosecution of its ordinary business, it has been held that where such transactions do not constitute a part of its ordinary business, a foreign corporation is not doing, transacting, carrying on, or engaging in business within a state by the acquisition, holding or disposal of real or personal property so situated; by making therein sales or contracts for the sale of goods; by the acquisition and holding of stock of a domestic corporation doing business in the state; by making loans, or by taking mortgages on land situated within the state as security therefor."

And on page 1291:

"It has generally been held that a foreign corporation is not 'doing' or 'transacting business' within the meaning of the statutes under consideration by reason of the fact that it owns and holds stock of a domestic corporation engaged in 'doing' or 'transacting business' therein. This is true, although the amount owned and held constitutes the controlling interest. It has also been held that a purchase by a foreign corporation of stock in a domestic corporation doing business within the state of its domicile does not constitute 'doing' or 'transacting business' within the meaning of such restrictive statutes."

In the case of Hunter W. Finch & Co. v. Zenith Furnace Co., 245 Ill. 111, 92 N. E. 521, the Supreme Court of Illinois had under consideration a statute of Minnesota like the statute here involved. Plaintiff, an Illinois cor-

poration, purchased from defendant, a Minnesota corporation, 50,000 tons of coal in Minnesota. Defendant in Minnesota breached its contracts and plaintiff sued in Illinois. The Minnesota corporation set up as defense (under the Minnesota statute, *supra*), that the Illinois corporation had not qualified to do business in Minnesota and that under the statute the plaintiff was not only prohibited transacting business in the State of Minnesota but also from acquiring holding or disposing of property in that State and that for such reasons the contract alleged to. have been breached was void. The Court held to the contrary, saying:

"A contract made by a foreign corporation doing business in Minnesota is not declared to be void, but the corporation is subject to a fine, and is not permitted to maintain any suit or action in any of the courts of the state. The rule in this state is that if a contract is unlawful under the statute it is void notwithstanding the statute imposes a penaly upon a foreign corporation doing business in violation of its provisions. Cincinnati Mutual Health Assurance Co. v. Rosenthal, 55 Ill. 85, 8 Am. Rep. 626. The same principle seems to be maintained by the Supreme Court of Minnesota. Ingersoll v. Randall, 14 Minn. 400 (Gil. 304) ; Heileman Brewing Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441. It was a part of the business of the plaintiff to purchase coal, but isolated transactions do not constitute carrying on business by a foreign corporation in the domestic state, numerous instances of which are given in 19 Cyc. 1268. The only transaction in Minnesota by the plaintiff was the making of the contract in question and authorizing a delivery of the coal to a partnership located in Minneapolis, in that state, and we do not regard a single transaction of that kind as engaging in business in Minnesota. We do not think it could have been

intended to prohibit a foreign corporation from making a single contract for a load of grain, stock or other personal property until it should open a public office, appoint an agent, file a copy of its charter and do the other things specified in the statute, or to make a contract of that kind utterly void, so that it would impose no liability on the foreign corporation or fix any standard of price or terms of payment. It is argued that the Minnesota statute goes further and prohibits a foreign corporation from acquiring, holding or disposing of property within that state without complying with the statute. That certainly could not have been intended to prevent a purchase of movable personal property, such as grain, stock or coal, and we think it must relate to acquiring property having a fixed situs in that state."

The last clause of Section 4095 R. G. S., 6026 C. G. L., was given full effect in the cases of Herbert H. Pape, Inc., v. Finch, 102 Fla. 425, 136 Sou. 496; and in Harris v. Zeuch, 103 Fla. 183, 137 Sou. 135. In the Finch, case, *supra,* the consrtuction and effect of Sec. 4098 R. G. S., 6029 C. G. L., was involved and in that connection we held: "The allegation of the declaration is that the two named defendants, Harry C. Finch and Millicent M. Finch, *individuals assuming to act in a corporate capacity* in the State of Florida under the name of Broadalbin Storage Company, *without then having been clothed with corporate existence* and authority in the State of Florida, assuming to so act as President and Secretary, respectively thereof, *did make, execute and deliver unto the plaintiff their certain promissory note* which was sued on.

"The principal plea demurred to alleged that the corporation purchased a piece of property in Florida, which under the Laws of New York, said corporation was allowed to take and hold title to in its corporate capacity.

This plea further shows that the purchase of said real estate, and the making, execution and delivery of said promissory note and mortgage, constituted the only transaction of business in Florida by said corporation; that the property so purchased is the only property which was ever owned by the corporation in Florida, throughout its existence. The plea also shows that the Broadalbin Storage Company, after it made the notes and mortgage on October 12, 1925, obtained from the Secretary of State on March 19th, 1926, before the institution of the suit, a proper permit to do business in Florida as a foreign corporation.

"Upon further consideration by the court, it appears that this plea presented a good defense and that the demurrer thereto was properly overruled.

"A corporation lawfully organized in another American State, by persons resident in that State, when the organization is consummated in the state of incorporation, may lawfully transact in Florida business authorized by the corporate charter and the laws of the State of incorporation, *if not specifically prohibited by the laws of this State.* Duke v. Taylor, 27 Fla. 64, 19 So. 192.

"The statute seems to make a distinction between the transaction of business in Florida, without securing a foreign corporation permit, and the simple act of acquiring, holding and disposing of property in this State until such permit is procured.

"This distinction is emphasized by a proviso added to original Section 6026 (4095) by Chapter 6876, Acts of 1915. Such proviso is to the effect that 'no violation of this law shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof.'

"To the extent that this proviso to the statute is applicable, transactions within it appear to have been taken

out of the rule which might otherwise apply. Therefore, while it continues to be a violation of the statutes for an unlicensed corporation of another State to 'acquire, hold or dispose of property in this State, the *consequences* of the violation are not made the same as when a corporation transacts business in this State without securing the required permit to act in a corporate capacity in this jurisdiction.

"It appears, therefore, that in its corporate capacity, a foreign corporation lawfully organized under the laws of another state may actually take, subject to the specific penalties provided by law for a violation of the statute (Section 7449 C. G. L., 5321 R. G. S.), valid title to property in Florida. This is so because the statute distinctly provides that no violation of the corporation law shall 'affect' the title to property acquired by such foreign corporation.

"If the Broadalbin Storage Company had power in its *corporate capacity* to *take title* to Florida property even though it was without a legal permit to otherwise exercise its corporate franchise in Florida, it would seem to follow that notes and mortgages executed by the corporation as a part of the transaction by which the title was acquired in such corporate capacity might also be regarded as having been executed in a corporate capacity as a consideration for such title.

"This brings the status of such notes and mortgages within the rule recognized in Duke v. Taylor, 27 Fla. 64, 19 So. 172, where it was declared that by *comity* the *corporate* status of a foreign corporation would be recognized in Florida in all cases where recognition *is not specifically prohibited by the laws of this State*.

"The legislature originally raised a general prohibition against corporate recognition of unlicensed foreign corporations by which not only the transaction of all corporate

business but the acquisition, holding and disposition of property was made absolutely and without reservation unlawful. See Chapter 5717, Acts of 1907. But this general and rigid prohibition was modified and relaxed by Chapter 6876, Acts of 1915, in so far as the title to property acquired, held or disposed of in violation of the statute is concerned.

"So the effect now is to extend a limited recognition to the *corporate character* of a duly organized foreign corporation when it takes title to property in Florida, even though such foreign corporation has not been domesticated in this State."

Aside from all other considerations and questions, it must be clear that under the provisions of Sec. 4095 R. G. S., 6026 C. G. L., viz.: "but no violation of this law shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof," the unqualified foreign corporation acquired good and clear title to the stock certificates and to the capital stock embraced therein of the domestic corporation. If it acquired good and legal title to the certificates and capital stock represented by such certificates, such title carried all the attributes, advantages and burdens of such ownership, including the power to dispose of the same so that clear legal title thereto would vest in its successor in title. Title would not be "unaffected" if it was affected by some statute so that the attributes of ownership could not be enjoyed by the holder of such title.

In this case the holder of the certificates of capital stock involved only seeks to exercise the privilege incident the ownership and title which is vested in him as to such certificates. This he is not deprived by the statutes, *supra,* to do but rather is he guaranteed by the above quoted provi-

sion of Sec. 4095 R. G. S., 6026 C. G. L., the privilege sought to be exercised.

So the order appealed from is reversed and the cause is remanded for further appropriate proceedings.

So ordered.

Reversed and remanded.

TERRELL, C. J., and THOMAS, J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN, not participating as authorized by Section 4687, Compiled General Lows of 1927, and Rule 21-A of the Rules of this Court.