**Doris BERKMAN, Appellant,**

v.

**ANN LEWIS SHOPS, Inc., Appellee.**

No. 233, Docket 24344.

United States Court of Appeals Second Circuit.

Argued Feb. 14, 1957.

Decided June 12, 1957.

George M. Lehr, New York City, for appellant.

Samuel Mezansky, New York City, for appellee.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The plaintiff, Doris Berkman, appeals from a judgment below entered for the defendant after trial to the court without a jury. The plaintiff, as assignee, sued to recover $7,211.77 with interest, as the balance owed on three separate judgments obtained by the plaintiff's assignor, Cuesta Rey & Com-

pany, against the defendant and a subsidiary of the defendant in a Florida state court. This action was originally commenced in the Supreme Court of the State of New York, New York County, but it was removed to the United States District Court for the Southern District of New York on the ground of diversity of citizenship.

The defendant, Ann Lewis Shops, Inc., was incorporated in January 1946 under the laws of the State of Delaware. It was organized for the purpose of owning the stock of subsidiary corporations which, in turn, operated retail stores in various states for the sale of women's apparel. These stores operated under several trade names such as "Ann Lewis," "Barbara Stone Shops," and "Cardell's." The defendant has qualified to do business in New York, and has its principal office in New York City.

On or about February 23, 1946, Louis Silver, the president of Ann Lewis Shops, Inc., began negotiating with Cuesta Rey & Company for a lease of certain store premises in Tampa, Florida. In July it was decided that the defendant organize a subsidiary corporation for the purpose of operating a retail store in Tampa. Therefore, on July 18, 1946, Ann Lewis Shops of Tampa, Inc. was incorporated under the laws of Delaware. Subsequently a lease was entered into between the subsidiary, Ann Lewis Shops of Tampa, Inc., and Cuesta Rey & Company. The subsidiary's obligations under the lease were guaranteed by the defendant. Louis Silver and Ira Silver signed the agreement in New York City on September 10, 1946, as president and secretary of both the parent and the subsidiary corporation. The lease was signed on the landlord's behalf in Tampa, Florida, on October 15, 1946. In 1951 an agreement modifying the lease was signed by the same individuals on behalf of .the three parties—lessor, lessee, and guarantor—in Tampa and New York City respectively.

The Tampa subsidiary had an original paid-in capital of $10,000. A total of $70,169 was invested in, or loaned to, this

subsidiary by the defendant, which was its sole stockholder. Although the subsidiary had substantially the same officers and directors as its parent, it maintained separate books and bank accounts and, with rare exceptions, paid its own bills. The subsidiary employed five or six persons at its Tampa store who were not employees of the parent-defendant.

The defendant maintained a central buying service which purchased merchandise to be retailed by its subsidiaries, and each subsidiary was charged proportionately with the expense of maintaining this buying service.

On June 8, July 1, and July 7, 1955, Cuesta Rey & Company, the landlord, commenced actions upon the lease against both Ann Lewis Shops of Tampa, Inc., the lessee, and the parent-guarantor in the Circuit Court for the 13th Judicial Circuit in and for Hillsborough County, Florida. The lessor's attorney sent, by registered mail, to the parent-guarantor, the defendant here, notices of the institution of the suits, pursuant to sections 47.16[1] and 47.30[2] of the Florida Statutes, F.S.A., along with copies of the summons and complaint. He also filed copies in the office of the Secretary of State of Florida, thereby complying in all respects with the prescribed Florida procedure for substituted service of process. The defendant received the notices, as well as the summons and complaint, at its main office in New York City.

Neither the defendant nor its Tampa subsidiary appeared in the Florida action; and, on motion of the plaintiff, default judgments were rendered against both the defendant, Ann Lewis Shops, Inc., and its subsidiary, Ann Lewis Shops

---

1. Section 47.16—Florida Statutes. *"Service of process upon non-residents engaging in business in state.* The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of this state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture, in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be significardation of the agreement of such persons and foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the pro-

vision of Section 47.30, Florida Statutes. Provided that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute."

2. Section 47.30—Florida Statutes. *"Method of service upon nonresidents.* Service of such process shall be made by leaving a copy of the process with a fee of two dollars in the hands of the secretary of state, or in his office, and such service shall be sufficient service upon a defendant who has appointed the secretary of state as his agent for the service of such process; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant, and the defendant's return receipt, and the affidavit of the plaintiff, or his attorney, of compliance herewith are filed with the papers in the case on or before the return day of the process or within such further time as the court may allow, or that such notice and copy are served upon the defendant, if found within the state, by an officer duly qualified to serve legal process, or, if found without the state, by a sheriff or deputy sheriff of any county of this state or by any duly constituted public officer qualified to serve like process in the state or jurisdiction where the defendant is found; and the officer's return showing such service to have been made is filed in the case on or before the return day of the process or within such further time as the court may allow."

of Tampa, Inc., in all three actions. The first two judgments were for rent installments unpaid for May 1 and June 1, 1955. The third was for delinquent taxes that were to be paid on April 1, 1955. All three judgments include costs and sums for reasonable attorneys' fees claimed pursuant to a provision in the lease permitting such recovery.

Partial payments were made on all three judgments (by whom it does not appear) with the result that there is now owing $746.16 on the first, $730.72 on the second, and $5,734.89 on the third, with interest. On October 11, 1955, Cuesta Rey & Company assigned the judgments to Doris Berkman, the plaintiff in this action. Shortly thereafter the present suit on these Florida judgments was brought in the New York Supreme Court, and then removed by the defendant to the United States District Court for the Southern District of New York.

The District Court concluded that the Florida court was without jurisdiction to render against the parent corporation, the defendant here, the judgments here sued upon, and therefore the judgments were void as against it. We affirm the District Court.

It was not disputed below or on appeal that the Florida court had jurisdiction over the subsidiary, Ann Lewis Shops of Tampa, Inc., which was admittedly "doing business" in the State of Florida, and the judgments against that corporation, not a defendant in this action, are valid. The Florida courts also had jurisdiction over the defendant corporation if the defendant "was engaged in * * * a business or business venture in the State of Florida" within the meaning of the applicable Florida Statute, section 47.16, F.S.A.[3]

The plaintiff-appellant contends that by virtue of the following facts the defendant was engaged in a "business venture" in Florida in 1955 when the causes of action originally arose: (1) the defendant owned all the stock of the Ann Lewis Shops of Tampa; (2) both parent and subsidiary had the same individuals as directors and substantially the same individuals as officers; (3) the defendant operated a central buying service for all its subsidiaries; (4) the defendant guaranteed the lease of the Tampa subsidiary; (5) that subsidiary had been organized by the defendant in 1946 for the sole purpose of operating a retail store in Tampa; and (6) the defendant had initiated negotiations for the Tampa lease several months prior to its decision to organize the subsidiary.

Of course the duly authenticated record of the judgment of a state is entitled to the same full faith and credit in every court within the United States as it has by law or usage in the courts of the state in which it was rendered.[4] "But in a suit upon the judgment of another state the jurisdiction of the court which rendered it is open to judicial inquiry, Chicago Life Insurance Co. v. Cherry, 244 U.S. 25, 37 S.Ct. 492, 61 L.Ed. 966, and when the matter of fact or law on which jurisdiction depends was not litigated in the original suit it is a matter to be adjudicated in the suit founded upon the judgment. Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897." Adam v. Saenger, 1938, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649.

We recognize that "the burden of undermining the decree of a sister state 'rests heavily upon the assailant.' " Cook v. Cook, 1951, 342 U.S. 126, 128, 72 S.Ct. 157, 159, 96 L.Ed. 146, but we find no merit in the contention that this defendant was subject to process within Florida. Therefore we affirm the court below in its holding that the Florida court lacked jurisdiction over this defendant to render the three judgments against it here sued upon.

I

In the leading case of Cannon Mfg. Co. v. Cudahy Packing, 1925, 267

---

3. See note 1, supra.

4. U.S.Const. art. IV, § 1; 28 U.S.C.A. § 1738.

U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, the Supreme Court held that a foreign corporation that solicited customers and sold and distributed its products in North Carolina through a wholly-owned subsidiary was not amenable to suit in a forum of that state since the separate identity of the two corporations was maintained and the activities within the state were actually carried on by the subsidiary. The Cannon rule has been followed;[5] and it is generally held that where the parent and the subsidiary, for example, maintain separate books and bank accounts, submit separate tax returns, file separate financial statements, and meticulously charge each other for any services rendered, the corporations will be found to be separate entities for the purpose of applying this rule. See, e. g., Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900; Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 9 Cir., 1951, 193 F.2d 158; Harris v. Deere and Company, 4 Cir., 1955, 223 F.2d 161. It seems clear that in Florida a foreign corporation is not "doing business," within the meaning of statutes that employ that phrase or similar language, solely by reason of the fact that it owns or holds stock of a subsidiary corporation that *is* "doing" or "conducting" business within the State of Florida. Cf. Crockin v. Boston Store of Ft. Myers, 1939, 137 Fla. 853, 855, 188 So. 853, 858.

We hold that on the facts of this case the defendant was not "doing business" in the State of Florida within the meaning of that phrase as it was construed in the Cannon case and as equivalent language is employed in section 47.16 of the Florida Statutes, F.S.A. The separate corporate identities of the defendant and its Tampa subsidiary were carefully preserved, and thus the two were not merely principal and agent in one organization. The subsidiary had its own capital, kept its own books and bank accounts, rented its own store and office, paid its own bills, and hired its own employees. It also had its own officers and Board of Directors who determined its policies, although the individuals holding those positions, with one exception, were the same for both parent and subsidiary.

## II

The plaintiff-appellant, in an effort to take this case outside the Cannon rule, points out that the statute here in question, section 47.16, was enacted in 1951 and embodies the phrase "business venture," in addition to the more conventional term "business." The plaintiff contends that the term "business venture" was intended by the Florida legislature to encompass commercial activities that might not suffice to constitute "doing business." It is argued that the defendant's contacts with the State of Florida, even if they did not amount to a "business," were sufficient to give the courts of Florida jurisdiction over the defendant because they comprise a "business venture."

In support of this contention, the plaintiff cites the recent trend in several states prompted by the Supreme Court decision in International Shoe Co. v. State of Washington,[6] 1945, 326 U.S

---

5. See 18 Fletcher, Cyclopedia Corporations §§ 8773, 8774 (Wolf. ed. 1955); Note, 18 A.L.R.2d 187 (1951); Note, 56 Colum.L. Rev. 394, 409–10 (1956); Note, 59 Yale L.J. 737, 756 n. 111 (1950).

6. In that case, the defendant corporation had no office in the State of Washington, and made no contracts either for the sale or purchase of merchandise there. In the years in question, however, it did employ eleven to thirteen commission salesmen who resided in that state. The defendant supplied these salesmen with sample shoes for display to prospective purchasers. On occasion the salesmen rented sample rooms for this purpose, but their authority was limited to exhibiting the samples and soliciting orders from prospective buyers. The orders were then transmitted to an office in St. Louis, Missouri, for acceptance or rejection, and, if accepted, the merchandise was shipped f. o. b. from points outside Washington to the purchasers within that state. On these facts the Supreme Court of Washington held that the defendant had rendered itself amenable to suit in

310, 66 S.Ct. 154, 90 L.Ed. 95, to expand the bases for jurisdiction over foreign corporations and other non-residents.[7] It is then argued that section 47.16, enacted in 1951, represents an attempt by the Florida legislature to vest jurisdiction in its courts over non-residents on the basis of contacts formerly held insufficient to constitute "doing business," as that term has been traditionally construed. The plaintiff also relies heavily on the recent decision of State ex rel. Weber v. Register, Fla.1953, 67 So.2d 619, where the Supreme Court of Florida indicated that "there is a vast difference between the words 'a business' and the words 'business venture' as used in Section 47.16." 67 So.2d at page 620.

 Despite the appellant's persuasive argument, we do not believe that the Florida legislature, in enacting section 47.16, intended to "overrule" the Cannon rule, which in another context had been approved by the highest court of Florida. See Crockin v. Boston Store of Ft. Myers, supra, 188 So. at page 856. The phrase "business venture" has been used in Florida statutes providing for jurisdiction over non-residents since 1911.[8] The 1951 amendment to the non-resident service of process statute, in addition to effecting several procedural modifications, was primarily designed to extend the provisions of the prior statute, which was limited to non-resident partnerships, so as to encompass foreign corporations and other forms of business organizations. See Note, Legislative Highlights, 4 U. of Fla.L.Rev. 382, 385–86 (1951). It would seem to us that the legislature, had it intended to "overrule" or circumvent such a well established jurisdictional principle as that embodied in the Cannon rule, would have implemented such an intent by more express language than the mere enactment of a phrase that had then had a forty-year statutory history.

We also believe that the case of State ex rel. Weber v. Register, Fla.1953, 67 So.2d 619, is clearly distinguishable. There non-resident individuals "had purchased an orange grove [in Florida] and * * * had conducted and operated the

that state upon obligations arising out of the activities of its salesmen in the State of Washington, and that the State could sue the defendant *in personam* to collect the tax laid upon the exercise of the privilege of employing salesmen within that state. In affirming this decision, the Supreme Court (per Stone, C. J.) wrote:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely * * * whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * *

" * * * It is evident that [the defendant's] operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure." International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 319–320, 66 S.Ct. 154, 159, 90 L.Ed. 95.

7. See, e. g., Md.Code Ann. art. 23, § 88(d) (Flack 1951); N.C.Gen.Stats. § 55–145 (1955); Note, Expanded Concepts of State Jurisdiction over Non-Residents: The Illinois Revised Practice Act, 31 Notre Dame Law. 223 (1956); Note, Service of Process on Foreign Corporations in the State Courts, 5 Duke B.J. 137 (1956); Note, The "Single Contract" as a Nexus for State Court Jurisdiction—International Shoe Is Stretched Again, 50 Nw.U.L.Rev. 425 (1955).

8. See Laws of Florida, c. 6224 (1911); Fla.Rev.Gen.Stats. 2602 (1920); Fla. Comp.Gen.Laws § 4249 (1927); Laws of Florida, c. 26657 (1951); Fla.Stats. § 47.16 (1955).

same as a business in Polk County, Florida." 67 So.2d at page 620. The Supreme Court of Florida, in upholding the validity of service upon the defendants under section 47.16, wrote:

"Although we do not agree that the listing of the grove property for sale was a 'transaction or operation connected with or incidental to' the business in which petitioners were engaged in this State, to wit: the maintenance and operation of a citrus grove, we believe that the allegations of the complaint * * * demonstrate clearly that the purchase of the property and the subsequent listing of the same for sale amounted to engaging in a 'business venture' as contemplated by our statute." 67 So.2d at page 620. (Emphasis added.)

Although the precise distinction between a "business" and a "business venture" was not made clear by the court in Weber,[9] it would seem that the latter term may encompass fact situations which do not constitute "doing business," but which present the necessary minimum contacts with the State of Florida constitutionally required under the International Shoe formulation.[10] But the Cannon rule has survived the decision in International Shoe,[11] and we are not persuaded by the Weber case [12] that the legislature or courts of Florida have extended that State's jurisdiction over foreign corporations merely by virtue of ownership and control of subsidiary corporations that are doing business in Florida.

Nor do we regard the defendant's guaranty of the lease of its subsidiary as a "business venture" *in* Florida. The guaranty was, of course, undertaken in the interest of the defendant, which naturally wished to facilitate the success of its wholly-owned subsidiary, but it was signed by the officers of the defendant in New York, and it did not represent undertaking within the State of Florida.[13] It seems clear that had an inde-

9. For criticism of the majority's analysis in Weber as a departure from traditional "doing business" tests, see State ex rel. Weber v. Register, supra, 67 So.2d at pages 622–626 (dissenting opinion), 8 Miami L.Q. 628 (1954); Stern, Conflict of Laws, 8 Miami L.Q. 209, 214–16 (1954).

10. See note 6, supra.

11. See, e. g., Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900; Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 9 Cir., 1951, 193 F.2d 158; Harris v. Deere and Company, 4 Cir., 1955, 223 F.2d 161; and authorities cited in note 5, supra.

12. The plaintiff also relies on the case of State ex rel. Guardian Credit Indemnity Corp. v. Harrison, Fla.1954, 74 So.2d 371, 378, which was not factually similar in any relevant way to the situation at bar. There the defendant corporation operated a collection service in Florida and it had once qualified to do business in that state, although its resident agent had resigned several months before initiation of the suit. The defendant furnished its "brokers" (commission salesmen) with instructions and supplies for use in presenting a "credit indemnity" plan to prospective clients who were lo-

cated in Florida. The court, in holding that the defendant was "engaged in 'a business or business venture' within the State of Florida," pointed out, *inter alia*, that the effective performance of any contract between the defendant and its Florida clients could take place only in Florida. Perhaps significantly, the author of the opinion, who had also written the opinion for the majority in Weber, did not attempt to draw a distinction between a "business" and a "business venture."

13. A resolution of the Board of Directors of the defendant stated that the guaranty of the Tampa lease was in "the interest of the company and in furtherance of its business," but the defendant never represented to the general public or to the plaintiff's assignor, which was fully aware of the separate corporate status of the Tampa subsidiary, that it was engaged in "a business or business venture" in Florida. Hence the situation at bar is distinguishable from that in Gray v. Eastman Kodak Co., D.C.E.D.Pa.1930, 53 F.2d 864. Cf. State of Maryland, for Use of Chrysler v. Eastern Air Lines, Inc., D.C.D.C.1948, 81 F.Supp. 345. See Note, Doing Business as a Test of Venue and Jurisdiction Over Foreign Corpora-

pendent third party located in New York guaranteed the lease of Ann Lewis Shops of Tampa, Inc., that party would not have been amenable to suit in the courts of Florida solely by virtue of that guaranty.[14] And, as we indicated above, the situation is not altered by the guarantor's ownership of the lessee when the corporate distinction between parent and subsidiary is factually, as well as technically, observed.

Judgment affirmed.

LUMBARD, Circuit Judge (dissenting).

I think the court's decision robs the phrase "business venture" of all independent significance, contrary to the plain meaning of the statute. Moreover, the decision is also contrary to recent statements by the Supreme Court of Florida and to the current trend in many states to extend jurisdictional limits, which, concededly, they are at liberty to do if there are certain minimum contacts with the states. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 99 L.Ed. 95; Note, Expanded Concepts of State Jurisdiction over Non-Residents: The Illinois Revised Civil Practice Act, 31 Notre Dame Law. 223 (1956).

Defendant was a holding company which owned and controlled various operating subsidiaries. On February 23, 1946, Louis Silver, president of the defendant, commenced negotiations for the lease of the Florida property involved in this case, on behalf of the defendants. Five months later, on July 18, 1946, defendant "cause[d] to be organized a wholly-owned subsidiary * * * under the name of Ann Lewis Shops of Tampa, Inc." 142 F.Supp. 417, 418.

Louis Silver became president of the subsidiary.

The negotiations started in February finally culminated in the lease and guaranty arrangement involved herein, which was dated September 10, 1946. It was signed by Silver on behalf of both parent and subsidiary on September 10, 1946 in New York City, and by the landlord on October 16, in Tampa.

It seems to me that this extended enterprise of organizing and establishing the business of its subsidiary in Florida easily fits within any plain or other meaning of "business venture" and that this is so regardless of whether defendant retained any stock in the subsidiary. Indeed, if the defendant had retained no stock at all but merely acted as an independent promoter, I find it difficult to see how this suit could be considered as anything but arising out of a business venture in Florida—the establishment of Ann Lewis of Tampa, Inc. The retention of stock should certainly not reduce Florida's interest in the organization of Ann Lewis of Tampa and we should not fasten on this to interpret Florida's own enactments in such a way as to inhibit the power she may exercise over non-residents who engage in transactions having contacts with that state.

The majority opinion, however, seems to construe appellant's case as resting solely on "ownership and control of subsidiary corporations that are doing business in Florida." But here jurisdiction need not be based on the activities of a subsidiary in Florida, but on defendant's own activities which go well beyond mere stock ownership and control. For this reason, there is no need to go into the question of whether Cannon Mfg. Co. v. Cudahy Packing Co., 1925, 267 U.S. 333,

tions in the Federal Courts, 56 Colum.L. Rev. 394, 406–10 (1956).

14. As Judge Dawson pointed out in his opinion below, 142 F.Supp. at page 422, the plaintiff could have required, as a provision of the lease, that the defendant consent to suit in Florida. Such a stipulation would have been effective

to give the courts of Florida *in personam* jurisdiction over the defendant. Cf. Gilbert v. Burnstine, 1931, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453; Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A., 2 Cir., 1957, 243 F.2d 342, 346; Bowles v. J. J. Schmitt & Co., 2 Cir., 1948, 170 F.2d 617, 622.

45 S.Ct. 250, 69 L.Ed. 634, should be "overruled," for that case is not in point. Cannon involved the problem of corporate presence, in which it was sought to impose the jurisdiction of a subsidiary's state over the parent as to a suit not involving any activities by the parent within the subsidiary's state. See D.C.W.D. N.C.1923, 292 F. 169, 170. The instant case presents a very different situation for here jurisdiction can be based not on the ownership and control of a subsidiary, but on all the parent's activities in Florida that were required for putting the subsidiary in business, which included the lease and guaranty arrangement, and which lasted for at least eight months.[1]

We must remember that this is a Florida statute that we are construing, and that we sit as a Florida court. I find it difficult to believe that any Florida court would so inhibit its power as to hold the statute inapplicable to the defendant's activities in the state, particularly after State ex rel. Weber v. Register, Fla. 1953, 67 So.2d 619. In that case, the Supreme Court of Florida seemed to go out of its way to ignore continuous activity in operating an orange grove in Florida, in order to focus on the purchase of the grove and listing it for sale as a distinct venture. The Court said "there is a vast difference between the words 'a business' and the words 'business venture' as used in § 47.16, supra. One may engage in a 'business venture' without operating, conducting, engaging in or carrying on a 'business.'" It seems to me the majority's stress on the Cannon case, which dealt with "doing business" for corporate presence purposes, reflects a failure to distinguish between "carrying on a 'business'" and "engag[ing] in a 'business venture'" contrary to the explicit distinction made by the Supreme Court of Florida.

Finally, the fact that the phrase "business venture" has been used in the Florida statutes since 1911 does not support the majority view and implication that the Cannon rule is a long-established principle of the Florida law relating to the phrase "business venture." In the first place, the fact that the phrase was first used in 1911 shows that the legislature cannot have intended to incorporate the Cannon rule which did not come into existence until 1925. In the second place, repeated reenactment of the phrase after Cannon was decided, indicates nothing at all about the Florida legislature's attitude toward the Cannon rule in connection with transactions arising out of a business venture, for until the instant case the Florida statute had not been construed to apply the Cannon rule to cases involving the category of "business venture." Indeed, there have been rather few cases in Florida involving the term "business venture." Consequently it cannot be said that the Cannon rule has become part of the law of Florida relating to "business venture" and no overruling of Cannon is involved in the construction of the phrase which I believe we should adopt.

I would reverse.

---

1. The majority's final point that jurisdiction could not be based solely on the guarantee is not really apposite, for here, there is much more—the organization and establishment, extending for at least 8 months, of a business enterprise of which the guarantee is merely a part. Moreover, it is not clear that the Florida statute would not ground jurisdiction solely on the guarantee. See the interpretation of State ex rel. Weber v. Register, Fla.1953, 67 So.2d 619, in Stern, Conflict of Laws, 8 Miami L.Q. 209, 214–16 (1954); cf. Compania De Astral, S.A. v. Boston Metals Co., 1954, 205 Md. 237, 107 A.2d 357, 108 A.2d 372, certiorari denied, 1955, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 89 A.2d 664, 25 A.L.R.2d 1193.