Will REVIES
v.
C. A. LOYD.
Civ. A. No. 8194.

United States District Court
W. D. Louisiana,
Monroe Division.
May 18, 1962.

W. Arlington Jones, Hattiesburg, Miss., R. L. Netterville, Joseph E. Brown, Jr., Natchez, Miss., for plaintiff.

Thompson L. Clarke, St. Joseph, La., Haynes L. Harkey, Jr., Hayes, Harkey & Smith, Monroe, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Plaintiff, a citizen of Mississippi, filed this action against C. A. Loyd, a citizen of Louisiana and of this District, for recognition and enforcement of a final judgment rendered on April 19, 1955, by the Circuit Court of Forrest County, Mississippi, in a case styled "Will Revies versus C. A. Loyd," docket number 4080 in the Mississippi court. The amount in controversy exceeds the jurisdictional amount of $10,000.

Defendant contends that the judgment sought to be recognized is null and void because the Mississippi court rendering the judgment lacked personal jurisdiction over the defendant and, therefore, that recognition and enforcement thereof would offend the Fifth and Fourteenth Amendments to the United States Constitution.

Simply put, the facts are these: During the month of May, 1949, plaintiff, a negro laborer, was working for defendant at Camp Shelby, Mississippi, dismantling and removing buildings to be moved later into Louisiana. In the performance of his duties, plaintiff was directed to do an act which resulted in an accident causing injuries to him. Suit was brought against defendant in the

Circuit Court of Forrest County, Mississippi, for recovery of damages. That suit was removed to the United States District Court for the Southern District of Mississippi and later dismissed without prejudice.

April 14, 1952, a second suit on the same cause of action was filed in the Circuit Court for Forrest County (referred to herein as the second Forrest County suit); and a default judgment was rendered for plaintiff on April 19, 1955, the recognition and enforcement thereof being the purpose of this action. Defendant's participation in the second Forrest County suit was through his attorneys, Stanton Hall and M. M. Roberts of Hattiesburg, Mississippi, who attempted to appear solely as *amicus curiae* to question the court's jurisdiction over the person of defendant.

Numerous defenses and arguments are raised here in an effort to prove want of personal jurisdiction over defendant in the second Forrest County suit. Service of process was attempted under Section 1437, Miss.Code Ann. (1942), and Sections 9363 and 9364, Miss.Code Ann. (1942), as amended by General Laws of 1950, Chapter 336, Sections 1 and 2, these statutes relating respectively to nonresidents of Mississippi "doing business" and nonresidents of Mississippi using streets, roads and highways of that State. Plaintiff argues that valid service of process was accomplished both under the "nonresident doing business statute" and the "nonresident motorist statute," and, moreover, that, through his counsel attempting to appear as *amicus curiae*, defendant made a general appearance to question the court's jurisdiction.

Because we find that defendant made an appearance in the second Forrest County suit which validly subjected him to that court's jurisdiction, it becomes unnecessary to determine whether valid service of process was accomplished under either Sections 1437, 9363, or 9364, Miss. Code Ann. (1942), as amended by General Laws of 1950, Chapter 336, Sections 1 and 2.

Defendant denies that either Stanton Hall or M. M. Roberts were authorized to represent him in the second Forrest County suit. He testified that, after being notified that the first Forrest County suit was going to be filed, he went to see Thompson Clarke, his attorney in St. Joseph, Louisiana, who had represented him for several years. Clarke told him, defendant says, to go to Mississippi and retain an attorney to handle the Mississippi litigation. Thereupon he went to Attorney Hall in Hattiesburg, Mississippi, and engaged him for the defense of the first suit.

Loyd testified that he turned over the case to Hall, as he had always done with Clarke, in its entirety and relied completely upon Hall's judgment and advice. In other words, he did not expect to be informed of every motion, exception, or other pleading in the case and was satisfied to simply "turn it over" to Hall. That case was later dismissed without prejudice and Hall tendered a bill for his professional services in the amount of $300.00. Loyd paid $150.00, but as of the date this case was tried on the merits had not paid the balance.

The second Forrest County suit, as noted, resulted in a jury verdict and final judgment on April 19, 1955, in the sum of $15,000.00 plus interest. It was during this second Forrest County suit that Loyd's attorney Hall filed an *amicus curiae* brief and in our opinion thereby subjected himself to the court's jurisdiction over his person.

Defendant urges that attorney Hall was not retained to represent him in the second Forrest County suit. The evidence and testimony show clearly, however, that Hall was expected to follow through on the events, if any, arising after dismissal of the first Forrest County suit. This was explained in a letter from Hall to Loyd and the latter also testified that he expected attorney Hall to look after his interest in Mississippi. As Loyd put it: "I expected something." Although Loyd testified that in the event of another suit he and attorney Hall would "have to have another talk," it is

undisputed that Hall was left with the impression that he was to follow through in the event of later action. Loyd never disputed this understanding. He testified as follows:

"Q It was some two years after that [November 3, 1950], but before final judgment, that you had the other correspondence with Mr. Hall and received the other letters and had the phone call with him on July 11, 1952, wasn't it?

"A Yes, sir.

"Q In that phone call, you discussed as to whether you should be in court the following morning, or not, didn't you, Mr. Loyd?

"A I don't remember.

"Q Well, he so advised you in his letter of the 11th of July, 1952. He advised you not to be in court?

"A Yes, sir.

"Q You were following his advice as of the 11th day of July, 1952, weren't you?

"A Yes, sir."

Attorney (now Circuit Judge) Hall testified:

"Q Now Judge, the appearances that you made here and the motions that were filed, that was in direct response to the original contact and employment of Mr. C. A. Loyd, wasn't it?

"A I will say this—that Mr. Loyd originally employed me in the case, came to my office and employed me and I took it upon myself to do everything in the world I could in behalf of Mr. Loyd's defense. I worked hard in the Circuit Court on the first suit and then in the Federal Court. He had made several appearances in the Federal Court and finally was successful in getting the suit dismissed in the Federal Court.

"After the suit was filed the second time in Forrest County, I tried to contact Mr. Loyd. As I said in my letters I phoned him, talked to him, told him about the case, but I never heard from him about it. He never wrote me a letter, he never contacted me on the phone and as I remember it Mr. Clarke never contacted me about that particular case, so when the case came up I thought it was our duty since I had represented him on other cases to try to do what I could because I could not understand his attitude towards us and I thought at that particular time that because he still owed us $150.00 and he wouldn't pay it so I took it upon ourselves then to try to protect Dewey Logan because we had contacted Dewey Logan as a witness in this case and he had given us the necessary information about the case and I figured that it was our duty to certainly protect him because he was certainly an innocent party in it, but as far as being represented by I mean [sic] Mr. Loyd paying us, contacting us he just didn't do one thing in the world.

"Q Judge, I want to ask you this question. It was your intention to further the interest of Mr. Loyd in these matters, wasn't it?

"A Well if it hadn't have been I wouldn't have filed that Amicus Curiae Motion to Dismiss.

"Q Now, that's what I'm talking about. I mean it was to his interest you thought the reason you came into Court and filed that?

"A Yes, it was to his interest."

We are thoroughly convinced from the record and testimony that Loyd expected further action by his attorney, Hall, in the event of a subsequent suit. He relied upon Hall's advice *during the time the second Forrest County suit was in progress,* and, therefore, he should not be allowed to have the benefit of counsel when it furthered his interest and repudiate it simply because it subjected him to the jurisdiction of the Mississippi court. We find, therefore, as a matter of fact, that Hall was retained by Loyd to represent him in the second Forrest County suit and that Hall, in filing the *amicus*

*curiae* brief, was performing an act which he thought advisable because he represented Loyd and was his attorney in Mississippi.

■ The legal question remaining, therefore, is whether the filing of the *amicus curiae* brief questioning the court's personal jurisdiction over defendant operated as a general appearance such as to subject defendant to the court's jurisdiction over his person. We find that it did for the following reasons.

The Mississippi Legislature, apparently in an effort to clarify any possible confusion in the jurisprudence and in order to definitely avoid the employment of "special appearances" in Mississippi Courts whereby a party may participate in litigation without subjecting himself to the jurisdiction of the Court, enacted Section 1881, Miss.Code Ann. (1942), providing:

> "Where the summons or citation, or the service thereof, is quashed on motion of the defendant, the case may be continued for the term, but defendant shall be deemed to have entered his appearance to the succeeding term of the court."

■ The effect of this statute, as we read it, is to provide that *any appearance* of the defendant in the Mississippi Court operates as a general appearance and subjects him to the Court's jurisdiction. This rule, peculiar to Mississippi and Texas,[1] appears on the surface to have been vitiated somewhat in earlier decisions (1893, 1917, and 1924) by Mississippi Courts. In 1929, however, the Mississippi Supreme Court strongly reasserted the policy.[2] Texas Courts have seldom permitted special appearances and this restriction upon the rights of the

nonresident defendant has been sanctioned by the United States Supreme Court.[3] In an exhaustive and well-written Note in the Mississippi Law Journal,[4] the author sets forth seven types of cases where he feels that an appearance tantamount to a special appearance has been allowed at one time or another, including one classification labeled "Appearance before the trial court as *amicus curiae* to question the court's jurisdiction of a defendant." On this subject the author concludes:

> "An early Mississippi case [84] discussed the right of an attorney to appear *amicus curiae* to bring to the attention of the trial court some jurisdictional matter that would defeat the plaintiff's action. In Columbia Star Milling Co. v. Brand [85] a corporation and its president were co-defendants. An attorney entered the president's personal appearance, and then, without entering the company's appearance, was allowed to argue as *amicus curiae* that the company was not properly in court.
>
> "In a later case [86] an attorney appeared *amicus curiae* to show that a defendant was not the agent of a corporation but of a partnership. After the declaration was amended, the attorney asked for time to prepare a defense. The court held that this constituted an appearance (the latter act, not the former) and allowed judgment by default against the defendant for not having answered. The court apparently conceded that if the *amicus curiae* had only raised the jurisdictional question there would have been no appearance by defendant. *It is difficult to understand how the amicus curiae can be the defend-*

---

1. See Tex.R.Civ.P. 122, and Miss.Statute cited, supra.

2. See McCoy v. Watson, 154 Miss. 307, 122 So. 368, 369 (1929), wherein the Court stated: "It has long been settled in our state both by statute * * * and by the general policy of our practice * * * that there is no such thing as a special appearance in our courts. It is

our settled, and long settled, practice that when a party comes in he must come in entirely or else he must entirely stay away. * * *"

3. York v. Texas, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890).

4. See Note, Special Appearances in Mississippi, 19 Miss.L.J. 59 (1947).

*ant's attorney for the latter motion and not his attorney for the former.*

"The appearance of the *amicus curiae* to question the trial court's jurisdiction is not a special appearance, within the meaning of Section 1881, but it accomplishes the same purpose. *Due to the obvious possibilities of abuse, the appearance of amicus curiae in the trial court should not be permitted to question that court's jurisdiction.* (Emphasis added.)

---

"84.  Baird v. Georgia Pac. R. Co., 12 So. 547, 548 (Miss.1893), wherein the court states: ' * * * did the appearance of the defendant * * * by attorney, though expressly declared to be solely for the purpose of admonishing the court that the necessary steps had not been taken to confer jurisdiction and to move to dismiss the attachment * * * amount to a general appearance? As courts are always careful to avoid usurping jurisdiction, a suggestion from one in no way connected with the case (an amicus curiae) that its jurisdiction was wrongfully invoked, or was in danger of being exceeded, would be respected * * *'

"85.  115 Miss. 625, 76 So. 557 (1917).

"86.  J. A. Maloney & Co. v. Tatum, 134 Miss. 714, 99 So. 129 (1924)."

We now proceed to analyze the cases mentioned in the Law Journal Note; and believe this analysis will demonstrate the correctness of our conclusions, especially considering that the latest Mississippi Supreme Court case, McCoy, supra, (1929), is in accord.

In Columbia Star Milling Co. v. Brand, supra, (1917), the plaintiff named as parties defendant two natural persons and one corporation, the latter being partially owned by Schonening, its president, who was also one of the parties defendant. Although process could not be served on the corporation, either through its agent or otherwise, the lower court held that the appearance of its president, Schonening, through his attorney who argued *amicus curiae* that the corporation was not properly in court, constituted an appearance by the corporation sufficient to vest the court with jurisdiction. The Mississippi Supreme Court reversed the lower court, holding that the corporation had not made an appearance such as to subject itself to the court's jurisdiction. The Supreme Court emphasized that Schonening's attorney was not representing the corporation; that he had informed the lower court of that fact; and that, in his capacity as attorney for Schonening, he had the privilege of suggesting to the court that any proposed motion in the case be overruled and also had the privilege of making the suggestion *amicus curiae*. It is readily seen, therefore, that Schonening's attorney was viewed as representing only the corporation's president and the corporation, therefore, was not held to have participated in the case or to have made an appearance, either general or special. The suggestion by the attorney that the corporation was not properly before the court was made in answer to the allegations in the complaint and in the interest of Schonening as an individual party defendant, so stated the Court.

In Maloney & Co. v. Tatum, supra, (1924), suit was filed against J. A. Maloney & Co. as a *corporation*, domiciled in New York, and process was served upon B. A. Cragin, Jr., who was named in the complaint as agent for the corporation. A copy of the summons was also mailed to the home address of the defendant. Subsequently, B. A. Cragin, Jr., filed as *amicus curiae*, an instrument reciting that there existed no such person as J. A. Maloney & Co., *a corporation*, domiciled in New York, although there did exist *a partnership* styled J. A. Maloney and composed of E. A. Maloney and F. P. Maloney, each of whom was a resident of New York, but neither of whom authorized him to represent them in such a manner as to authorize service of process upon him. The instrument concluded with an assertion that the court was wholly without jurisdiction over the defendants. After filing this instrument, Cragin was called as a witness by plaintiff and he testified that the facts recited in the instrument were furnished to him

by a member of the partnership, and that he had filed the instrument at the request of the partnership. Thereupon, plaintiff was allowed to file an amended complaint. At the next term of court, defendant having failed to interpose a defense, the court announced that it would sustain a motion for a judgment by default, whereupon an attorney appeared asking permission to prepare and interpose a defense on the merits of the action. Although permission and a delay were granted, the defendant's attorney failed to interpose a defense and judgment was later granted for the plaintiff as prayed. On appeal, the Mississippi Supreme Court held that *amicus curiae* participation by Cragin, together with the action by defendant's attorney in moving the court for time to prepare a defense to the action and for leave to file pleas, the motions being sustained, constituted an appearance by defendant and authorized the entry of a judgment upon failure of the defendant to file pleas or interpose any defense. The judgment of the lower court, therefore, was affirmed.

The author of Special Appearances in Mississippi [5] suggests that in Maloney & Co. v. Tatum, supra, "The court apparently conceded that if the *amicus curiae* had only raised the jurisdictional question there would have been no appearance by defendant. It is difficult to understand how the *amicus curiae* can be the defendant's attorney for the latter motion and not his attorney for the former." With this first conclusion we cannot agree. The court in Tatum did not hold, infer, or otherwise imply that the *amicus curiae* argument questioning the court's jurisdiction did not constitute an appearance. Rather, the court explained that the totality of pleadings, including the *amicus curiae* pleading, on behalf of the partnership did constitute an appearance. The court said, quoting from its opinion in Baird v. Georgia Pac. Ry. Co., 12 So. 547 (Miss.Sup.Ct., 1893):

"'As courts are always careful to avoid usurping jurisdiction, a suggestion from one *in no way connected with the case* (an amicus curiae) that its jurisdiction was wrongfully invoked, or was in danger of being exceeded, would be respected,' (Emphasis added) *but where*, as in the case at bar, *the suggestion comes from one who represents the defendants*, and, in response to the motion to dismiss the cause, the declaration is amended so as to meet the objections that the defendant had not been sued in the proper capacity, and thereafter, in order to prevent a judgment by default from being entered, counsel representing the defendant appears and moves the court for time to prepare a defense to the action and for leave to file pleas, and this motion is sustained by the court, and an order is entered granting the necessary time within which to prepare and file such pleas, we think this constituted an appearance and authorized the entry of a judgment upon the failure of the defendant to file pleas or interpose any defense." (Emphasis added.)

Thus, the court has drawn a clear distinction between *amicus curiae* appearances made at the request or upon the authorization of the defendant on the one hand, and *amicus curiae* appearances questioning jurisdiction but initiated by "one in no way connected with the case" on the other. In Tatum, the *amicus curiae* pleading (the instrument filed by Cragin) was filed at the suggestion of the defendant, the partnership, and therefore the defendant's status in court was affected by that pleading in its behalf. Contrast, however, the court's holding in Columbia Star Milling Co. v. Brand, supra, wherein the *amicus curiae* argument was made on behalf of one other than the absent defendant. There, also, the court looked to this controlling distinction and, accordingly, held that the absent defendant had not made an appearance because the *amicus curiae* argument, although fa-

---

5. See note 4, supra.

vorable to its interests, was not made by an attorney representing it in the case. Rather, the argument was made by another defendant's attorney and was, in the court's opinion, made on behalf of that other defendant.

We conclude, therefore, that, if the absent defendant authorizes or requests, either expressly or impliedly, that the *amicus curiae* participation be made on his behalf, the express policy of Section 1881, Miss.Code Ann. (1942), namely that *any* appearance of the defendant in the Mississippi court operates as a general appearance and subjects it to that court's jurisdiction, should prevail.

Our conclusion here is strengthened by the prevailing rule in Texas, the only other American jurisdiction wherein special appearances are not provided for in the courts. Although an attorney retained by the defendant has been permitted to appear as *amicus curiae* to point out to a Texas court its lack of personal jurisdiction, the court may determine *sua sponte* that the attorney's presence constitutes a general appearance on the defendant's behalf. See Flinn v. Krotz, 293 S.W. 625 (Tex.Civ. App., 1927), and Thomas v. Driver, 55 S.W.2d 187 (Tex.Civ.App., 1932).

The Supreme Court's sanctioning of the Texas procedure (substantially identical to that in Mississippi although more strictly followed by the Texas courts) in York v. Texas [6] rested upon two explicit premises: first, that the defendant need not appear at all because he may always collaterally attack the validity of the judgment; and second, that although the procedure was admittedly inconvenient, "mere convenience is not substance of right." 137 U.S. at 21, 11 S.Ct. at 10, 34 L.Ed. 604. While the first premise has been questioned in a later Supreme Court decision, York v. Texas has never been overruled. See Civil Procedure, Selected Essays Reprinted from the Harvard Law Review, 1961, at page 278, et seq.

Moreover, the distinction between *amicus curiae* appearances by an attorney solely on behalf of a defendant already before the court on the one hand, and, on the other hand, an *amicus curiae* appearance by an attorney representing the nonresident defendant is recognized in Texas. See, for example, Burger v. Burger, 293 S.W.2d 122 (Tex.Civ.App., 1956), reversed in 156 Tex. 584, 298 S.W. 2d 119 (1957), and Broome v. Smith, 265 S.W.2d 897 (Tex.Civ.App., 1954).

Defendant here in fact was represented in the second Forrest County suit by attorney Hall. An *amicus curiae* brief was filed by Hall contesting the Court's jurisdiction over defendant's person. This was done in defendant's interest, and because Hall had promised earlier that he would "follow through" in any later developments respecting plaintiff's claim. This participation in the suit subjected defendant to the Court's jurisdiction under the provisions of Section 1881, Miss.Code Ann. (1942), and the policy expressed in McCoy v. Watson, supra note 2, Columbia Star Milling Co. v. Brand, supra, Maloney & Co. v. Tatum, supra.

■■■ A duly authenticated record of the judgment of a state court is entitled to the same full faith and credit in every Court within the United States as it has by law or usage in the Courts of the state in which it was rendered. U.S. Const. art. IV, § 1; 28 U.S.C.A. § 1738. The jurisdiction of the Court that rendered it, however, is open to judicial inquiry when enforcement is sought elsewhere, although the burden of undermining the decree of the sister state rests heavily upon the assailant. See Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44 (2nd Cir., 1957). Moreover, a final judgment of a state court presumes jurisdiction both over the subject matter and over the person. In re Adoption of a Minor, 94 U.S.App.D.C. 131, 214 F.2d 844, 47 A.L.R.2d 813 (1954). Defendant here has not overcome the presumption of adequate jurisdiction in the Circuit Court of Forrest County, Mississippi. The record and testimony clearly reflect

---

6. See Note 3 supra.

sufficient participation by defendant in the action to render him bound by the Mississippi judgment.

For the reasons given, therefore, judgment will be entered for plaintiff as prayed.

Present decree accordingly.